FARIS
*vs*
LEWIS.

price paid in such case *may* not be excessive.

</div>

---

## Faris *vs* Lewis.

APPEAL FROM THE WASHINGTON CIRCUIT.

*Fraud. Special damage. Variance. Excessive damage.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

IN an action on the case, for both general and special damages, resulting, as averred, from the fraudulent sale by the defendant to the plaintiff, of a glandered horse, verdict and judgment were rendered for $127 50, equal to about the value of the horse sold and of that of two other horses of the plaintiff, which died of glanders communicated by that horse, after his purchase of it, and also the legal interest on the aggregate of those values. And the first and principal question for revision is, whether, admitting the fraud which seems to have been sufficiently proved, the loss of the plaintiff's other horses was such a natural and proximate consequence of the sale and delivery to him of a horse known by the vendor to be afflicted with a contagious disease, as authorized a recovery for that special damage.

It seems that the parties resided in the same county, and that the plaintiff purchased the horse for use on his farm. The communication of the contagion to other horses with which the distempered horse must have been expected to be associated in domestic use, until the pur-

<div align="right">

CASE.

*Case 123.*

*May 24.*

The case stated.

</div>

chaser had become apprised of the existence and true character of the distemper, should be presumed to have been known by the fraudulent vendor, to be a probable and natural consequence of his sale of such a horse to such a man, and for such use; and consequently, the special damage which did so result to the purchaser, should be considered as wantonly inflicted by the vendor's fraud, and of course should be deemed in law, as well as in fact, an injury for which damages might be recovered as certainly as they could have been had the vendor directly inoculated the vendee's other horses, instead of doing it indirectly, through the instrumentality of the diseased horse, which he fraudulently sold to him.

The true principle of the common, as well as of the civil law, is thus illustrated by *Pothier*: "If a person sells "me a cow, which he knows to be infected with a *con-* "*tagious* distemper, and conceals this disease from me, "such concealment is a fraud on his part, which renders "him responsible for the damage that I suffer, not only "in that particular cow which is the object of his original "obligation, *but also in my other cattle,* to which the 'dis. "temper is communicated, for *it is a fraud of the seller* "*which occasions this damage.*"

A vendor of a horse and knowing it to be diseased with a contagious distemper, & failing to disclose the fact to vendee, is responsible for the injury to, or loss of other horses of vendee, to which the disease is communicated.

This principle has been frequently recognized in England and the States of our union: See *Nurse* vs *Barnes,* (*T. Raymond,* 77;) *Mainwaring* vs *Brandon,* (8 *Taunton,* 202;) *Borradaile* vs *Brunton,* (*Ib.* 535;) *Neale* vs *Miller,* (3 *B. & Cr.* 533;) *Jeffrey* vs *Bigelow et al.* (13 *Wendell,* 518.)

In *Nurse* vs *Barnes,* a lessee of a mill, who was not permitted by the lessor to occupy and use it, recovered £500, the price of stock he had laid in and had lost in consequence of not getting the mill according to contract.

In *Barradaile* vs *Brunton,* the purchaser of a chain cable, warranted to be sufficient for the anchor of a ship, recovered damages, not only for a defect in the chain, but for the value of the anchor which he lost in consequence of that defect.

And in *Jeffrey* vs *Bigelow et al.* the agent of the defendants having fraudulently sold to the plaintiff a flock of sheep which had the *scab,* and communicated it after the

purchase, to a portion of another flock of the purchaser, he recovered against them damages for the injury thus resulting to him in his original flock, as well as in the purchased sheep; and that recovery was sustained by the Supreme Court of New York.

In all these cases the principle is the same, and that is, that a vendor is legally responsible for all damage resulting to his vendee as the necessary or natural consequence of the vendor's fraud or breach of contract. And that reasonable and well established principle applies clearly and conclusively to this case, and sustains the verdict for the special damages as sued for and proved.

Another question involved in the record is, whether the plaintiff had a right to recover the price of the diseased horse which he bought from the defendant, and which was of no value; and we are of the opinion that he had no such right; because he had paid no part of the stipulated price, and having, by a renunciation of the contract within reasonable time after the discovery of the fraud, virtually rescinded the sale, he could never be compelled to pay the price or any portion of it.

The next question is, whether the Circuit Court erred in overruling a motion for a non-suit, made on the ground of a variance between the contract of sale as described in the *declaration*, and *that which* was proved. The only variance was as to the consideration—the declaration describing it as the wood work of a wagon, and the proof as the wood work of a wagon *and eighteen chairs.*

Although the action is not either for enforcing the contract or for recovering damages for a breach of it, yet the allegations and proof respecting the contract, should correspond sufficiently to make the judgment in this case a bar to any future suit for the same cause. But we are of the opinion that, notwithstanding the slight variance in the cause of action as specially alledged, and that which was proved, there was such a substantial identity as to allow no reasonable doubt that they are the same; and consequently, in our judgment, the Circuit Judge did not err in overruling the motion for a non-suit.

The only remaining question is as to the amount of the verdict and judgment. It is almost certain that, in as-

A purchaser of a horse having paid no part of the price, and being defrauded in the purchase, tenders back the horse, suing for consequential damages resulting from the fraud, cannot recover the value of the diseased horse, as by the tender back the contract is at an end.

Although an action be not for enforcing a contract, nor for recovering damages for breach of it, yet if it be for consequential damages resulting from a fraud in it, the allegation and proof of it should correspond.

Allegation that the consideration to be paid

for a horse
bought was "the
wood work of a
wagon," proof
that it was "the
wood work of a
wagon and 18
chairs," is not
such a substan-
tial variance as
to authorize a
non-suit.

sessing the damages, the jury included the value of the horse sold by the defendant to the plaintiff, and legal interest on that value, and on that also of the other horses to which the glanders were communicated. It, therefore, seems to this Court, upon this last point, that the judgment should not be sustained. There was no proof of actual damage from the keeping of the diseased horses, or the ministration of any curative means to them.

As, therefore, the verdict seems to have been illegally compounded, and consequently to have been excessive, the judgment is reversed and the cause remanded for a new trial.

*Daviess and Hardin* for appellant; *M'Henry* for appellee.