McRAE v. LONSBY et al.

(Circuit Court of Appeals, Sixth Circuit. May 14, 1904.)

No. 1,271.

1. FRAUDULENT REPRESENTATIONS—QUESTIONS FOR JURY.

Where, in an action on a note given for the machinery and the sunken hull of a vessel, defendants by special plea alleged that the note was given by reason of false representations as to the condition of the hull, on which defendants relied, and there was evidence that when defendants attempted to ascertain the condition of the hull the water over and about it was so disturbed and roily that the hull could not be seen, and that defendants relied on the representations, which were warranted to be true, it was proper for the court to submit to the jury whether the facts could have been readily ascertained by inspection, and whether defendants in fact relied on the truth of such representations.

2. SAME — CONTRACTS — RESCISSION — FALSE REPRESENTATIONS — WARRANTY—BREACH.

Where defendants claimed the right to rescind a contract by reason of the falsity of representations made by plaintiff concerning the property

130 F.—2

purchased, it was immaterial whether defendants relied on the representations per se, or on an express warranty of their truth.

**3. SAME—SPECIAL DEFENSE—STATE PRACTICE—NOTICE.**

Under the law of Michigan that a notice of special defense to be attached to a plea of the general issue is sufficient if it informs the plaintiff of the substance of the matter proposed to be shown under it, a notice of special defense to an action on a note given for the price of the machinery and sunken hull of a vessel, alleging that at the time of the purchase the hull was submerged, and that plaintiff induced defendants to make the purchase by representations detailed with regard to the condition of the hull, its value, etc., as of his own knowledge, and warranted such representations to be true, but that the same were false, and that it was thereafter discovered that the hull was worthless, whereupon defendants demanded their note and their expenses incurred in endeavoring to raise the hull, for which judgment was demanded in favor of defendants with the cancellation of the note, was sufficient to raise the issue of defendants' right to a cancellation of the note for fraud.

**4. SAME—DAMAGES.**

Where defendants were induced to enter into a contract for the purchase of the machinery and sunken hull of a vessel by reason of plaintiff's false representations, and on attempting to raise the hull it was found to be worthless, defendants, in addition to a rescission of the contract, were entitled to recover the reasonable expense incurred by them in endeavoring to raise the hull before its true condition was discovered.

**5. SAME—EVIDENCE.**

Where a contract for the sale of the machinery and the sunken hull of a vessel was in writing, the hull and machinery being both sold for a lump sum, and the seller claimed that the hull was not included in fixing the price, but was thrown in as a gift, expert evidence was admissible to show that the machinery without the hull was of much less value than the purchase price named in the contract.

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

Tarsney & Fitzpatrick, for plaintiff in error.

Martin Crocker, for defendants in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge, delivered the opinion of the court.

This is an action brought to recover the contents of a promissory note given by the defendants, Lonsby, to McRae, November 8, 1899, for $3,300, with interest. The defendants pleaded the general issue, and added a notice of a special defense in the form prescribed by a statute of Michigan relating to pleadings in actions at law. The special defense set up was, in substance, this: That the note was given for the purchase price of the parts of the dismantled steamboat called the Byron Trerice, consisting of the hull, the boiler, the engine, and machinery; that at the time of the purchase all except the hull had been removed and was stored on land; that the hull was lying submerged in Lake Erie, near Leamington, Ontario, where she had suffered the loss of her upper parts by fire and was sunk; that the plaintiff induced the defendants to make the purchase by representations, which are detailed at length, in regard to the condition of the hull and its value, as of his own knowledge, and warranted his representations to be true, declaring that if they were not true the defendants need not pay for the articles sold; that the defendants relied upon

these representations, believing them to be true, and made the purchase and gave the note upon the faith of them; that they set about raising the hull, and in doing so found that the representations of the plaintiff above mentioned were false, and that the hull was in fact worthless; that on making this discovery they notified the plaintiff that they would have no more to do with the articles purchased or claim any interest in them, and demanded back their note; and that they expended about $500 in trying to get the hull afloat, for which they prayed judgment against the plaintiff. It appears that the boiler, engine, and machinery were never taken by the defendants, but remained where the plaintiff had stored them before the sale. The hull fell apart in the attempt to raise it, and was left where it was.

Upon the trial, the parties offered evidence bearing upon the issues made by the pleadings. The jury rendered a verdict in favor of the defendants for $450. This verdict plainly imports, in the light of the charge of the court, that the jury found that the representations were made as charged, that they were false, that the defendants had on that account repudiated the purchase, and were therefore entitled to have their note surrendered; and, further, that the defendants, in reliance upon the false representations, had expended $450 in endeavoring to get the hull afloat before they discovered the fraud. The plaintiff took several exceptions to the rulings of the court upon the trial, which we proceed to consider. Most of them may, however, be generalized and considered together. It is contended that, in order to create a liability for representations which are untrue, it must appear that the facts could not readily be known by inspection; and, further, that it must appear that the party complaining relied upon the truth of the representations and acted upon them; and, subordinate to this last proposition, that, if it appears that the party relied upon a warranty that the representations were true, he must depend upon the warranty as a contract of indemnity, and cannot ground his complaint upon the false representations per se. And it is claimed that the facts were open to inspection; that the defendants did not rely upon the representations, but relied solely upon the warranty.

The first two of the propositions above stated may be admitted to be correct. But the facts to which it is proposed to apply them were matters to be determined by the jury. And it is sufficient to say that there was some evidence from which they might have determined them in favor of the defendants. There was evidence that, when the defendants tried to find out the condition of the hull, the water over and about it was so disturbed and roily that the hull could not be seen. There was also evidence tending to show that the defendants relied upon the representations, for the representations were what was warranted. It is useless to argue that the weight of the evidence was the other way. The court was not authorized on that account to take the questions from the jury.

With respect to the other proposition, it is to be observed that the question whether the defendants relied upon the representations which proved to be false, or relied upon a warranty of their truth, was one which concerned the sufficiency of the ground on which the defendants relied as a justification of their rescission of the contract, and the dis-

tinction contended for was wholly immaterial. For whether the false representations or a false warranty of their truth were relied upon in either case, on discovery of their falsity the purchaser might rescind. Thornton v. Wynn, 12 Wheat. 183, 6 L. Ed. 595; Rubin v. Sturtevant, 80 Fed. 930, 26 C. C. A. 259; Voorhees v. Earl, 2 Hill, 288, 38 Am. Dec. 588; Dorr v. Fisher, 1 Cush. 271. The distinction is for most purposes rather shadowy. It will be understood that when we speak of a false warranty we are referring to a warranty superimposed upon false representations, and not a mere warranty unaccompanied by fraud. In the former case it has long been settled that an action of tort will lie, the law regarding the warranty as being a continuation of the fraudulent representations. In this case the court put the case to the jury in such form as would require the defendants to prove that the representations of the plaintiff were false and fraudulent, and not that a bare warranty would be sufficient. By the law of Michigan, the notice of special matter to be attached to the general issue is not required to conform to the rules of special pleading, and it is enough if it informs the plaintiff of the substance of the matter proposed to be shown under it. Tested by this rule, it cannot be doubted that this notice informed the plaintiff fully of the matters which were upon the trial attempted to be proved. If acute criticism can be turned upon it in respect to its noncompliance with matters of form, it is such criticism that the statute abolishing special pleading and substituting a mere notice was designed to thwart. Rosenbury v. Angell, 6 Mich. 508; McHardy v. Wadsworth, 8 Mich. 349; Farmers' Mutual Ins. Co. v. Crampton, 43 Mich. 421, 5 N. W. 447.

It is objected that the court erred in giving such instructions as would permit the jury to find a verdict in favor of the defendants for the expenses they were put to in trying to get the hull up out of the water. But we think that, if such expenses were reasonable in amount, they might be recovered as damages produced by the plaintiff's fraudulent representations. Whether they were reasonable or not was a question for the jury. It is true that the court told the jury that, if they found that the contract was brought about by the fraud of the plaintiff, they might allow the sum of $450 to the defendants, there being some evidence that that was the amount of expenses incurred. The plaintiff's exception was "to that part of the charge wherein the court says, if they should find for the defendant on the ground of false representations, that they may allow him what he has expended in the attempt to raise the vessel." This exception seems to be founded on the objection to allowing such a recovery at all, and not to point to any error of the court in submitting the sum of $450 as the amount which they might find. If the plaintiff desired the question of the reasonableness of an expenditure to that amount to be submitted, he should have drawn the court's attention to that subject. As we have indicated, we think the exception to any recovery for such expenses cannot be sustained. The rescission of the contract by the defendants did not prevent their recovery for the damages they were brought to suffer by relying on the false representations which induced it. Not having got what they bought, they were not obliged to go on and keep and pay for a thing they had not bought and did not want. Nor would the

refunding of the price paid—that is to say, the recovery of the note—restore to them the expense they had incurred by reason of the plaintiff's fraud, a consequence which the plaintiff must have known the defendants would suffer. Warren v. Cole, 15 Mich. 265; Kimball & Austin Mfg. Co. v. Vroman, 35 Mich. 310, 24 Am. Rep. 558 (a case of false warranty); Atlanta, etc., R. Co. v. Hodnett, 29 Ga. 461; 14 A. & E. Encycl. of L. 178. In Wilson v. New U. S. Cattle Ranch Co., 36 U. S. App. 634, 73 Fed. 994, 20 C. C. A. 241, Judge Sanborn stated the rule as follows:

"Upon a rescission of a contract, the measure of damages is the consideration paid, and the moneys naturally expended on account of the purchase before the fraud was discovered."

A witness named Cederstrom was called by defendants as an expert to prove the value of the engine, the object being to repel a contention made by the plaintiff that the hull was not included in the purchase but was thrown in as a gift, by showing that the boiler, engine, and other machinery would not be worth anything like the purchase price. It was objected that the testimony was incompetent because there was no such issue. But the contention of the plaintiff just stated did raise such an issue. However, the testimony on this subject was wholly immaterial, and could have done no harm, for the contract, which was in writing, expressly included the hull as one of the articles sold for the lump sum of $3,300.

The judgment must be affirmed, with costs.