## HART-PARR CO. v. DUNCAN.

No. 8655.—Opinion Filed April 15, 1919.

Rehearing Denied June 10, 1919.

(Syllabus by the Court.)

1. **Sales—Warranty—Buyer's Right to Rescind—Conditions Precedent.**

Where a traction engine is purchased under contract warranting the engine to do certain work, and the contract contains the further provision that, if inside of six days from the date of its first use it shall fail to fill the warranty, * * * notice shall be given the seller of the defects and a reasonable time given the seller to remedy the defects, and the further provision that "the use of such engine after the expiration of six days shall be conclusive evidence of the acceptance of same

by the purchaser," held, that such a provision does not constitute a condition precedent to the purchaser's right to a rescission where the holding and use of such engine after the six days has been at the instance and request of the seller and for the benefit of the seller.

**2. Same—Tender—Necessity.**

(a) Requested instructions examined, and held to not state the law applicable to the issues involved.

(b) Where a failure by a purchaser to make tender within the time provided for in a contract is the result of the request of the seller, and where such delay is due to the fault of the seller and due to no fault of the purchaser, it is not error for the court to refuse to submit to the jury the question whether tender has been made within a reasonable time.

**3. Same—Warranty—Issues.**

(a) Instructions of the court examined, and held to substantially state the law applicable to the facts and issues in the case.

(b) Where a contract of purchase of an oil traction engine contains warranty that "the engine will develop certain horse power," and also a warranty that "the oil-cooling device will keep the cylinders sufficiently cooled for the successful operation of the engine," and it appears from the evidence that the failure of the engine to do satisfactory work is due wholly to the defects in the cooling device, it is immaterial in such case whether the engine develops the horse power it is warranted to develop, and in such case it is not error for the court to refuse to submit the question of fact to the jury whether the engine will develop the horse power it was warranted to develop.

**4. Same—Breach of Warranty—Damages.**

Where an engine is purchased under warranty that it will do certain work, and, relying upon such warranty, the purchaser executes his promissory notes in payment thereof, and such warranty is breached by the seller, and the purchaser seeks a rescission of the contract because of the breach, he will not be denied the right also to recover the actual damages he has sustained by reason of the breach.

**5. Sales—Contract—Divisibility.**

Where in a single contract an oil tractor engine and gang plows, each represented to be perfectly suited to the other, are purchased together from the same company at the same time and for the specific purpose of plowing, in such case the fact that the engine is supplied by the selling company from its house in one state and the plows from its house in another state, and the fact that they are ordered on separate order blanks and separate notes given for each, do not render the contract divisible, in the absence of other evidence that it was the intention of the parties that it should be divisible.

Error from District Court, Tillman County; Chas. B. Wilson, Jr., Assigned Judge.

Action by the Hart-Parr Company against Joseph T. Duncan, with counterclaim by defendant for affirmative relief. Verdict and judgment denying plaintiff's demand and allowing affirmative relief, and from the judgment and an order overruling its motion for a new trial, plaintiff brings errors. Affirmed.

Mounts & Davis, Chester I. Long, and Austin M. Cowan, for plaintiff in error.

Wilson & Roe, for defendant in error.

HARRISON, J. The governing facts in this case are that in June, 1914, plaintiff in error, the Hart-Parr Company, a corporation of Charles City, Iowa, sold to defendant in error, Jos. T. Duncan, a certain 40 horse power oil tractor engine and two six-furrow disc plows, taking in payment Duncan's five promissory notes, aggregating $2,785, secured by mortgage on the engine and plows.

The engine was warranted to do good work, but would not do so, and could not be made to do so. Duncan notified the Hart-Parr Company of such fact, and refused to pay the notes because of the worthlessness of the engine, whereupon the Hart-Parr Company brought suit on the notes. Duncan answered, denying liability on the notes because of breach of warranty by the company, and also asked for affirmative relief in damages alleged to have been caused by the company in selling him a defective engine.

The company replied to Duncan's answer, and the case was tried upon the issues thus formed, resulting in a verdict and judgment releasing Duncan from liability on the notes and giving him damages in the sum of $294.-68, the amount paid by him for freight on the engine.

From such judgment and order overruling motion for new trial the Hart-Parr Company appeals upon 15 specific assignments of errors, including the assignment that the court erred in overruling motion for new trial, which motion itself contained 14 grounds for a new trial.

The entire assignment of errors, however, is presented and argued in the plaintiff in error's brief under the following topics:

(1) The question of tender.

(2) A refusal to give requested instructions.

(3) Errors in the instructions given by the court.

(4) The defendant not entitled to rescind.

(5) Errors in the verdict and judgment in

releasing defendant from liability on the notes given for the plows.

Under the first proposition it is contended by plaintiff in error that the defendant had not complied with the provision of the contract as to tender of the engine, and was therefore not entitled to a rescission of the contract. The contract in question consisted of a printed order furnished by the company which Duncan had signed and sent in to the company for the shipment of the engine and plows, which order was made subject to the warranties contained therein.

Among the provisions of warranty was the provision that the engine would develop certain horse power; also the provision that the oil-cooling device would keep the cylinders sufficiently cooled for the successful operation of the engine; and the further provision that:

"If inside of six days from the date of its first use it shall fail to fill the warranty with respect to the development of power, notice shall be given the Hart-Parr Company at their office at Charles City, Iowa, by registered letter or telegram, stating particularly wherein it fails to fill the warranty, and reasonable time given said company to send a competent person to remedy the defects, if any there be; the purchasers rendering necessary and friendly assistance. If the engine cannot be made to develop the guaranteed power, it shall be returned by the purchasers free of charge to the shipping point where received, and the payments made will be refunded, and no further claim is to be made on the company.

"If the purchasers fail to make the engine do satisfactory work through improper management, inefficient operators, or neglect to observe the printed or written directions of the manufacturers, then the purchasers are to keep the engine, also to pay all necessary expenses incurred by any man sent at their request to put the engine in condition for successful operation.

"It is further mutually understood and agreed that the use of said engine after the expiration of the six days named in the above warranty shall be conclusive evidence of the acceptance of the same, and full satisfaction to the undersigned, who agrees thereafter to make no other claim on the Hart-Parr Company. * * *"

The company contends that the defendant, by keeping the engine more than six days after he had received it and by not returning it at the end of six days, had not complied with the conditions precedent to his right to rescission and was not in position to ask for a rescission.

A number of cases are cited in support of this contention, among which are several Oklahoma cases as well as cases from other states in support of the general rule:

"Where a contract of sale is coupled with an express warranty which stipulates the course to be pursued by the purchaser in the event the warranty fails, such stipulation must be followed by the purchaser in order to enforce the warranty."

But the above rule is not applicable to the facts in this case. The testimony discloses that this engine was brought to Duncan's place about the 18th day of June and put to work by one of the Hart-Parr Company's experts, but failed to do good work from the very beginning; that the first expert remained with the engine from about June 18th until about June 27th, the engine from the beginning and at all times failing to give satisfaction. After the first expert left, Duncan called up the company and informed them that the engine was not working satisfactorily, and was requested by the company to try to get along with it until they could get a man; that they had no available man at that time, but would send one as soon as possible. The man came in about a week, and other men came later; and they continued to try to make the engine run until about the 26th of September, having spent more than two months in a vain endeavor to make it work, and all this delay at the instance and request of the company.

The company's expert set up the engine on the 18th of June, and continued from then until the 27th day of June trying to make it run, but he could not make it do satisfactory work, and, when the company was informed of this fact, it requested Duncan to get along with it until another expert could be sent. Thus the failure to return the engine according to the stipulation relied upon by the company was brought about at the instance and request of the company and for the benefit of the company. In fact, it appears from this testimony that all the delay in failing to return the engine and ask for a rescission of the contract was at the request of the company and for the benefit of the company. The company continued to send experts to try to make the engine do satisfactory work for a period of over two months, which delay was of no benefit whatever to Duncan. In fact, as the testimony shows, Duncan was materially damaged by reason of the delay. The company was getting all the benefit of the delay in the hope of ultimately making this engine do the work instead of having to take it back or replace it with another engine.

Under these circumstances there is no rule of law, at least none recognized by this court, that would deny Duncan the benefit of the

provision of warranty and force him to take a worthless engine and pay $2,785 for it.

It is contended also that no sufficient tender was made by Duncan. This contention is not supported by the evidence. Even if a formal tender was material, such contention is not sustained by the evidence.

Plaintiff in error lays great stress upon the fact that the engine at the time suit was brought was upon Duncan's premises and in his possession, and that the provision in the contract was that the engine should be returned to the railroad station at Hollister. But the testimony is that from the beginning the company had knowledge that the engine was defective, and that from the 18th of June to the 26th day of September this defective engine had been kept by Duncan to Duncan's material detriment, in order to give the company opportunity to make the engine work, if it could be made to do so, and that at the end of this time Duncan, having become thoroughly satisfied that the engine was absolutely worthless and could not possibly be made to do satisfactory work, refused to grant any further delay, and notified the company that the engine was there; that it was out in his field; that he was ready at any time to deliver it at Hollister, and would do so upon the surrender by the company of his notes. This the company refused to do. Under these circumstances Duncan was not required to return the engine at the station at which it had been received, knowing that the company would not receive it and had failed and refused to return his notes. See Young v. Blackert, 51 Okla. 285, 151 Pac. 1057; Barber Medicine Co. v. Bradley, 48 Okla. 82, 150 Pac. 127; Rawlings v. Ufer, 61 Oklahoma, 161 Pac. 183, also J. I. Case Threshing Mach. Co. v. Huber, 160 Mich. 92, 125 N. W. 66, 32 L. R. A. (N. S.) 212.

Second Proposition. Under this proposition plaintiff in error contends that the court erred in refusing to give requested instructions 1, 2, 3, and 4 requested by the company. Under the evidence in this case the requested instructions were properly refused by the court for the reason that they did not state the law applicable to the facts in the case. The requested instructions referred to are drawn upon the theory that the failure of Duncan to return the engine after having used it six days, as stipulated in the order, was due to Duncan's fault, when as a matter of fact it appears from the record that Duncan's failure to return it at the end of six days' use and the prolonged delay in asking to be released from his notes were due to the fault of the company.

It is also contended that the court erred in refusing to submit to the jury the question whether or not tender had been made within a reasonable time. This contention likewise is based upon the theory that the delay in making tender within the time prescribed in the contract was due to the fault of Duncan, which failure, as we have heretofore observed, cannot be sustained under the record.

Third Proposition. Under the third proposition it is contended that the court erred in its instructions to the jury. The argument in this regard is based partly upon two theories: One, that Duncan had failed to act promptly after the discovery of the defects or fraud, and that the failure to so act was due to his own fault; and the other, that the court had eliminated from the case the question of "whether the engine would develop the horse power provided for in the warranty," and submitted to the jury only one question, "as to whether the cooling device had fulfilled the conditions of the warranty." As has already been observed, the question as to whether Duncan acted within a reasonable time was not a material question in the case. Under the circumstances, and under the undisputed facts in the case, it was immaterial whether the engine developed the horse power it was warranted to develop or not, so long as the cooling device was so defective as to render the entire engine worthless. If the cooling device had done the part it was warranted to do, then the engine might have developed the horse power it was warranted to develop, but, inasmuch as the cooling device was so defective that the engine became overheated and the cylinder warped and rendered useless and worthless, it was immaterial, so far as this case is concerned, whether it would have developed the horse power or not, and hence no error to eliminate the question of "horse power" and submit to the jury the question alone "as to whether the cooling device had fulfilled the warranty." We think the instruction complained of was a substantially correct statement of the law applicable to the issues involved.

Fourth Proposition. Under this proposition it is argued, citing a number of authorities in support of such contention, that Duncan, having elected to sue for a breach of warranty, could not thereafter ask for rescission of the contract, and the court erred in submitting the case to the jury on the question of rescission. As to whether this contention should be sustained if plaintiff in error's premise were correct, we do not feel called upon to decide, but the issues of fact presented by the pleadings were that the company brought this suit upon the notes

and asked for judgment for the face value thereof with interest.

The defendant answered, admitting the execution of the notes, but alleging that they were given in consideration of the machine and engine involved here; that the engine was worthless, and therefore the notes were given for no consideration. These facts, if true, would have entitled the defendant to a rescission of the contract. In addition to these facts the defendant also alleged that, by reason of the worthlessness of the engine and by reason of the fact that a worthless engine had been sold to him, he had been damaged to the extent of the freight he had paid on the engine, which was $294, and that he had been otherwise damaged in his endeavor to make the engine work, in different amounts that he had paid out, which sums would not have been necessary to pay out if the engine had worked satisfactorily, together with other items of damage which he alleged he sustained by reason of the fact that the company had sold him an engine that was of no use to him. There is no inconsistency in these causes of action. If the company had sold Duncan an engine warranted to do good work, and, relying upon such warranty, Duncan had executed his promissory notes, aggregating $2,785, and the engine should prove worthless, prove to be of no value whatever to Duncan, and fail wholly to perform the work it was purchased to do, the work it was warranted to do, then upon proof of such facts Duncan would be entitled to release from liability on the notes, and in addition to that, if he had been actually damaged by reason of fraud perpetrated by the company in selling him a worthless engine, then upon proof of such damage he would be entitled to recover therefor. There is no inconsistency in the two causes of action. Phillips et. al. v. Mitchell et al., 68 Oklahoma, 172 Pac. 85.

Fifth Proposition. Under this proposition it is argued that the court erred in overruling the motion of plaintiff for judgment in its favor upon the two notes for the plows which were purchased with the engine.

This contention is based upon the assumption that the purchase of the plows constituted a separate contract, and despite the fact that the plows and engine were purchased under separate and distinct contracts, the failure of the engine to come up to the warranty did not relieve the defendant from liability on the notes given for the plows, which had been purchased under separate contract

Plaintiff in error in its brief says:

"The mere fact that the two contracts of purchase were made at the same time and may have been part of the same transaction does not prevent the contracts from being divisible. A separate price was set out for each, separate notes were given for each article, and separate orders were made for each. Even though the purchase was covered by one contract, yet, where separate prices are given, the contract is divisible, and a rescission of part of the divisible contract does not entitle the defendant to rescission as to the other"—citing cases in support of this contention.

But the facts in the case do not support this theory. It appears from the record that Duncan wrote to the Hart-Parr Company at Charles City, Iowa, telling them, in substance, that he would be in the market for an engine and requesting full information as to the kind of an engine suitable to his needs and all particulars in regard to what the company had called their "free trial offer." In reply to his request Duncan received the following letter from the company at Charles City, Iowa, which appears as Exhibit A in the record, to wit:

"Mr. Joe T. Duncan, Route 1, Hollister, Okla.—Dear Sir: Your favor just at hand, requesting full particulars about our free trial offer, and telling us that you are operating a half section of land, and that you expect to do some road grading as well as the farm work, with your tractor.

"The free trial offer plan that has been recently put into force by our company makes it possible for paying one dollar down on the outfit, and also leaves it up to you to decide whether or not you can afford to continue doing your work with horses, and do expensive farming, or whether you want to do cheaper farming, the Hart-Parr way.

"We are building our tractors in several sizes, but for the half section farm we recommend our 27 BHP tractor, and a set of our four bottom self and half lift plows.

"However, your conditions may be unusual, and there may be some reason why this tractor wouldn't be the best one for your work, so we are asking you to fill out the inclosed coupon, and mail it promptly to our office at Wichita, Kansas, which office has charge of all our business in your section. They are familiar with your farming conditions there and are in position to advise with you fully and completely as to which one of our rigs you ought to have on your farm.

"They will take the matter up with you at once, and quote you our prices and terms, and explain to you fully all about this free trial offer plan, the plan that makes it easy for you to try out a Hart-Parr oil tractor to your own satisfaction on your own farm and find out whether or not it would do the business for you. We are,
"Yours very truly, Sales Department,
"Hart-Parr Co., by D. C. Hull."

It is observed that the above letter plainly and definitely tells Duncan that the Wichita office has charge of all the Hart-Parr business in Duncan's section of the country, and that the Wichita office would advise him as to what was best suited to his needs, and, following these instructions from the company, Duncan wrote the Wichita office, the office which the company said had charge of all its business in Duncan's section. And, pursuant to Duncan's letter to the Wichita office, a Mr. Thompson was sent by the Wichita office to advise what he needed and to sell him what he needed.

Under these circumstances Mr. Thompson came to Duncan not merely as an agent with limited authority, but as the authorized representative of the Wichita house, which had charge of all the company's business in Duncan's section of the country. Hence any representations made by Thompson were representations made by the company. Thompson was the man chosen by the company and sent by the company to tell Duncan just what he needed. The company spoke through Thompson to Duncan, and the company is bound by the representations which Thompson made for the company to Duncan. Hence the company told Duncan, through Thompson, that the engine in question was the kind of engine he needed, the kind that would serve his purpose, and that the plows in question were the kind of plows he needed for his particular purpose. Duncan needed the engine for the plows and needed the plows for the engine. He had a certain work to be done; he had no use for either without the other, and no use for either unless both would work satisfactorily. Thompson led him to believe that they were just what he needed, and upon Thompson's representations he bought the plows and engine with which to do his plowing. It was all one contract, all one purchase. The fact that the plow was ordered on one blank and the engine on another, and that separate notes were given for each, did not render it a separable or divisible contract, or make it two distinct contracts.

The plows which were suited to this engine were priced at a certain figure, and the engine that was suited to the plows was priced at a certain figure, and Duncan upon a certain date purchased them, all for a specified price. The plows were kept in stock at the Wichita office and the engine kept in stock at the Charles City, Iowa, offices; hence the necessity of two separate order blanks to complete the one purchase, which in our opinion, in absence of other evidence that the parties intended it to be divisible, constituted one indivisible purchase contract.

The court therefore did not err in refusing to direct judgment for the company on the notes given for the plows.

When the entire case is summed up, it amounts to this, that Duncan had a half section of land that he wanted to have plowed; he needed the engine and plows to do it with; he had no use for either without both. Thompson was sent as the representative of the company to tell Duncan what he needed and to sell it to him. Relying on what Thompson said as to what he needed, Duncan entered into a purchase contract for the implements or instruments which combined do his plowing. The company sold him what they warranted to be just such an implement or combination of implements as would do the work he wanted done, and took his notes aggregating $2,785 in payment. The combination was worthless to Duncan, and the company knew it to be worthless; yet it asked the court for judgment for the full amount of the notes with interest. Duncan asked the court for release from liability on the notes and for damages caused by the fraud.

The issues involved were submitted to the jury by the court, the jury returned a verdict in favor of the defendant, and upon such verdict the court rendered judgment.

We find no substantial error in the record.

The judgment is affirmed.

All the Justices concur.