255 S.W.2d 105 (1953)
SCHROEDER
v.
ZYKAN.
No. 28460.
St. Louis Court of Appeals. Missouri.
February 17, 1953.
*107 Arthur U. Simmons, Ludwig Mayer and J. Leonard Walther, Clayton, for appellant.
A. J. Haverstick, St. Louis, Herbert W. Ziercher, Clayton, for respondent.
HOUSER, Commissioner.
Action based upon fraud, to recover the amount of the down payment made on a contract for the purchase of a septic tank cleaning business, and for time lost and expenses incurred. Plaintiff is Frank W. Schroeder, the purchaser. Defendant is Frank E. Zykan, the seller. Plaintiff recovered judgment for $2,338, the jury specifying the following items: $2,000 (the amount of the down payment), $285 for interest and $53 for advertising. Defendant took nothing on his counterclaim for $1,800 which was the balance due on the contract. Defendant appeals from the judgment for plaintiff.
Plaintiff's petition alleged that defendant made the following representations: that he owned and proposed to sell to plaintiff the business, truck tank and equipment of AAA Septic Tank Cleaning Service; that the business would be profitable to plaintiff; that the business was promoted and procured and the public was acquainted with his business by display advertisements in telephone directories; that the future of the business depended upon the uninterrupted rendition of said telephone directory advertising and the corresponding telephone service; and that defendant would continue the telephone advertisement and number and transmit to plaintiff all telephone calls from customers desiring septic tank service. The petition alleged the falsity and fraudulent character of the representations; and that defendant at the time of the closing of the sale did not have a certificate of title to the truck and could not transfer title thereto to plaintiff. The petition further alleged reliance by plaintiff upon the representations, payment of $2,000 on account of the total purchase price of $3,800 for the business, truck and tools, refusal to pay the $1,800 balance when he learned that the representations were false and fraudulent, expenditure of sums in contemplation of acquiring the business, for advertising, printing, and insurance, and loss of time, and concluded with a prayer for $2,175 with interest from May 18, 1949.
The evidence favorable to plaintiff showed that around May 15, 1949 the parties discussed the sale of the business to plaintiff; that in the preliminary discussion defendant represented that he had made $200,000 in the business; that he would like to see plaintiff go into it; that plaintiff had better make up his mind because he had only ten days to renew the advertising in the telephone directory. Defendant admitted that he told plaintiff that he had ten days on some ads and sixty days on other ads in which to get his advertisements in the St. Louis and suburban telephone directories. Plaintiff having had no experience in the business wished to consult a Mr. Curry, a neighbor and a good mechanic, before he would be interested in the business. Curry having indicated that he would go in with plaintiff as a partner, plaintiff notified defendant that he would accept the offer and take over the business. On May 18, 1949, a meeting for the purpose of agreeing upon the terms of the sale was held at defendant's house. Plaintiff, defendant and Mr. Shaughnessy, defendant's bookkeeper, were present. At that time defendant told plaintiff that he would sell him his tank, truck and equipment, give plaintiff the trade name AAA Septic Tank Cleaning Service and the good will that went with it, his personal telephone at his office for a period of time, transfer to plaintiff all calls that came through his office for the period of one year, and turn over all his septic tank business to plaintiff. Defendant told plaintiff that he would have a certain length of time to renew the advertisements in the yellow pages of the telephone book and to have the number changed. A written memorandum was prepared at the time and signed by defendant, reciting that defendant had sold his septic tank business including truck, tank body, bores, tools and the name AAA, and agreeing to assign his interest in the business to plaintiff and to transfer to plaintiff all service calls received by him for a period of one year. *108 The paper, dated May 18, 1949, recited the sale price of $3,800; acknowledged receipt of $2,000 and showed a balance due of $1,800. After defendant signed the paper plaintiff gave defendant a check for $2,000 as part of the purchase price. Plaintiff then asked to see the title to the truck. Defendant was unable to find the title to the truck and assured plaintiff that he had nothing to worry about, urging him to "go on and in a few days I will have it fixed for you and have a title all ready for you." The next day plaintiff sent his wife down to the telephone company for the purpose of renewing the septic tank advertising in the telephone directory. Plaintiff then found that the advertisement had been canceled and that it was too late to renew the advertising in time for it to appear in the forthcoming publication of the St. Louis County and City of St. Charles directories, although there was still sufficient time to have it renewed so as to appear in the St. Louis City directory, which is distributed to all subscribers in the St. Louis County area. It appears that on March 31 defendant had signed cancellations for directory advertising in the Greater St. Louis telephone directory, the St. Louis suburban directory and the St. Charles directory, and had kept the telephone number but changed the listing from "AAA Septic Tank Cleaning Service" to "Frank E. Zykan." The cancellations to the St. Charles and St. Louis suburban directories were effective June 1 and could not be renewed after May 18 but the advertising in the Greater St. Louis directory could have been renewed until August 15. When plaintiff confronted defendant with the information that he could not continue the directory advertising in the suburban and St. Charles directories defendant told him that he could still carry the ad in the Greater St. Louis directory and get enough business out of it, with defendant's telephone number. A week later defendant's telephone was disconnected.
Shortly after May 18 defendant referred a service call to plaintiff and plaintiff did the work, received $65, and used the truck, defendant lending plaintiff a license plate for the truck. Four or five days later plaintiff received another call from defendant to do a cleaning job and that job was completed. These jobs were done after plaintiff's wife had gone to the telephone company and had been told that she could renew the advertising only in the Greater St. Louis directory. Both service calls were made before the date upon which the parties were to close the deal. The truck was purchased new by defendant in 1946. Although he received a bill of sale at that time, no certificate of title was issued and plaintiff did not have a certificate of title on May 18, 1949. On that date defendant assured plaintiff that he would have a title for him in a few days. Defendant made efforts to procure a truck license for plaintiff but was unable to do so because of the lack of a certificate of title. Plaintiff and his wife went to defendant several times but were never given a certificate of title. Plaintiff arranged for a bank to finance the balance due on the transaction and about May 28 plaintiff and defendant met at the bank where a mortgage in blank was signed but the transaction could not be consummated for lack of a certificate of title. Not having a certificate of title plaintiff could not proceed with the business, which depended upon the use of the truck. On inquiry to the State Highway Patrol plaintiff was informed that defendant did not have title to the truck and that he could not operate the truck upon the streets without a license. On several occasions plaintiff told defendant that he did not feel like he wanted to go through with the deal because defendant had no title and "had misrepresented everything" to him. Two weeks after May 18 plaintiff, his wife and an attorney went to defendant's house to close the deal. At that time defendant offered plaintiff an application for a title, stating that it was the title to the truck. On the advice of his attorney plaintiff refused to accept it and was advised not to pay the balance due on the contract until defendant produced the title to the truck. Plaintiff canceled the insurance which he had taken out on the truck and canceled advertising in the local newspapers. After three or four attempts on as many different nights, plaintiff finally found defendant and told *109 him "Frank, this rotten deal, no title, is making me sick to my stomach, from loss of sleep and loss of my life savings. I want my money back." Plaintiff offered to return the truck if defendant would return the $2,000. This occurred about three weeks after May 18. Plaintiff did not actually take the truck to defendant's yard and offer it to him. Plaintiff was unwilling to do this until defendant returned the $2,000 but the truck was to be brought to defendant if defendant gave plaintiff a check for $2,000. Defendant conceded that somewhere between thirty and sixty days after May 18 plaintiff told defendant he would return the truck to him upon repayment of the $2,000. Defendant promised to return the money within a week but did not do so. Subsequent promises to give plaintiff a check for $2,000 were not kept by defendant. Plaintiff was never furnished with a certificate of title, although he saw a certificate of title at the office of the prosecuting attorney where he went some twenty-eight days after May 18 for the purpose of making a complaint about the matter. Defendant applied for the issuance of a certificate of title after May 18 and one was issued to him on June 16, 1949. From June 1, 1949 to the date of trial the truck, covered with processed paper, remained in plaintiff's yard, set up on blocks. On August 8, 1949 an attorney for plaintiff wrote defendant requesting the return of the $2,000. In March, 1950 this suit was filed.
Plaintiff's Instruction No. 1 authorized a verdict for plaintiff upon a finding that the representations referred to in the petition were made by defendant and were false, known to be false, and were made for the purpose of inducing plaintiff to enter into a contract for the sale of the truck and to pay $2,000 as part of the purchase price; that at the time they were made, defendant did not have title to the truck or that he had discontinued advertising in the telephone directories, and that plaintiff believed the representations or any of them to be true, relied thereon, was thereby induced to pay defendant $2,000 on account of the purchase price, and as a direct result thereof suffered damage.
Instruction No. 4 directed a verdict for defendant upon a finding that the contract was made, that it was complied with by defendant and that the balance of $1,800 was due and unpaid. The court added the following at the end of Instruction No. 4: "unless you find for the Plaintiff under Instruction No. 1. If you should find for the Plaintiff under said Instruction No. 1, then you cannot find for defendant under this instruction."
Instruction No. 6 given for plaintiff read as follows:
"The Court instructs the Jury that if you find for the plaintiff on the issues herein joined, then your verdict in his favor should be for the sum of $2000.00, together with any sum, if any, you find and believe plaintiff expended for advertising, printing of cards and insurance, and for the value of the time, if any, plaintiff lost by reason of the transaction mentioned in the evidence, together with interest on said sum of $2000.00 at the rate of 6% per annum from May 18, 1949."
Defendant contends that plaintiff did not prove fraud, and did not prove that he was damaged by the alleged fraudulent misrepresentations. We find no merit in this contention, it appearing that both charges of fraud were fully substantiated.
As to the advertising, defendant represented that continuous advertising, whereby the service was held out to the public, was vital in order to obtain business; and that if plaintiff promptly purchased the business the listings could be renewed in time to maintain continuity of advertising in the classified sections of the three telephone directories. At that very time it was too late to renew the listings in two of the directories. It is a reasonable inference from all of the evidence that defendant knew of the falsity of this representation, or made it recklessly as a positive assertion without knowledge of its truth, and that he intended that plaintiff should act thereon. Plaintiff did act thereon by entering into the contract, paying $2,000 to appellant, and spending at least $53 on local newspaper advertising.
*110 As to the truck title, defendant represented that he would give plaintiff title to the septic tank truck and equipment. Certainly the representation was material, since the truck was indispensable to the operation of the business. At the time the representation was made, and at the time fixed for the closing of the deal, defendant did not have a certificate of title to the truck, and for weeks thereafter was unable to transfer the certificate of title to plaintiff. It is a reasonable inference from the evidence that the representation was made with intention that plaintiff rely, and that plaintiff did rely thereon to his damage, in that he paid $2,000 to defendant. Section 301.210 RSMo 1949, V.A.M.S., makes the sale of a used motor vehicle fraudulent and void unless at the time of delivery there shall pass between the parties a certificate of ownership, duly assigned. Fowler v. Golden, 240 Mo.App. 627, 212 S.W.2d 93, loc. cit. 94. No such certificate passed between defendant and the concern from which he purchased the truck. Defendant had no title thereto, and consequently could not transfer title to plaintiff. The sale was illegal, fraudulent and void. We cannot agree with defendant that he had "title" to the truck because he had a "special interest" therein, and the exclusive right to the ownership thereof. Nor is there merit in the contention that defendant could have compelled the issuance of a certificate of title, or that plaintiff by taking the proper proceedings could have compelled defendant to assign a certificate of title to him. Plaintiff contracted for a truck, not for a chose in action.
The principal point raised on this appeal is that Instruction No. 6 improperly declares the measure of damages. Defendant claims that the measure of damages is the difference between the value of the property as represented by the seller and its actual market value at the time of the sale; that by filing a tort action plaintiff has abandoned any right to rescind and has chosen to affirm the contract with its benefits and burdens and retain the property and rights acquired thereby. Defendant cites cases wherein the purchaser retained the property which was the subject-matter of a sale induced by fraudulent misrepresentation and then sued in deceit for damages caused by the misrepresentation. In those cases the purchaser affirmed the contract insofar as the seller had performed and sought merely to recover the difference between the value of the consideration for which he contracted and that which he actually received. Those cases, however, do not control in the instant situation. Here the purchaser disaffirmed the contract upon learning of the fraud, repudiated the transaction, and attempted to make restitution to the seller. Under such circumstances the applicable measure of damages differs from that proposed by defendant.
In 37 C.J.S., Fraud, § 143, pp. 478, 480, it is said:
"The rule that a defrauded purchaser's damages are to be measured by the difference between the real and represented values of the property purchased does not apply where, because of the peculiar circumstances of the case involved, such difference fails to measure accurately the loss sustained, as where the purchaser rescinds and returns the property received, or where he received nothing of value; but in such cases he may properly recover the amount he paid with interest from the date of payment, * * *."
Dunham v. Tenth St. Garage & Sales Co., Mo.App., 94 S.W.2d 1096; Heed v. Pierce, 8 Mo.App. 569; Cramer v. Overfield, 115 Kan. 197, 222 P. 85; Anderson v. Heasley, 95 Kan. 572, 148 P. 738; Liles v. Pentecost, 213 Ala. 413, 105 So. 198. Recovery of the purchase price and interest thereon, however, will not compensate the purchaser for incidental losses and expenses which he suffers as a result of the seller's misrepresentations, and in order to make the defrauded purchaser whole recovery is allowed for such losses and expenses as well as for interest on that part of the purchase price paid. McRae v. Lonsby, 6 Cir., 1904, 130 F. 17; Faris v. Lewis, 1842, 2 B. Mon. 375, 41 Ky. 375; Warren v. Cole, 1867, 15 Mich. 265; Ruben v. Lewis, 1897, 20 Misc. 583, 46 N.Y.S. 426; American Pure Food Co. v. G. W. Elliott & Co., 1909, 151 N.C. 393, 66 S.E. 451, 31 L.R.A.,N.S., 910; Fields v. Brown, 1912, 160 N.C. 295, *111 76 S.E. 8; Hart-Parr Co. v. Duncan, 1919, 75 Okl. 59, 181 P. 288, 4 A.L.R. 1434; Holland v. Western Bank & Trust Company, 1909, 56 Tex.Civ.App. 324, 118 S.W. 218, 119 S.W. 694; Dietrich v. Badders, 1913, 4 Boyce 499, 27 Del. 499, 507, 90 A. 47, 51; Williston on Contracts, Revised Ed. (1937) Vol. 5, Sec. 1528A, p. 4286.
Having discovered the fraud while the contract was yet executory the purchaser could sue for and recover damages according to the measure to which we have referred, provided he repudiated the transaction in a timely manner and tendered to the seller the consideration in as good condition as when he received it. Boyer v. Garner, Mo.App., 15 S.W.2d 893; Cantrell v. Sheppard, Mo.App., 247 S.W.2d 872, loc. cit. 875. This is true in the case at bar whether plaintiff parted with the down payment and incurred the incidental losses as a result of defendant's representations as to the advertising or as to the truck title, or both. In Boyer v. Garner, supra, the action was for money had and received, which is ex contractu in nature, but we see no impediment to the maintenance of the instant action based upon tort liability for fraud and deceit. At common law a defrauded purchaser had an election. He could rescind the contract and recover what he had parted with, or he could retain what he had purchased and sue for the difference between its value as represented and its actual value. He could not both rescind and recover damages, however, because of the inconsistency between rescission (which involves the setting aside and repudiation of a subsisting contract) and a claim for damages (which involves the affirmance of a subsisting contract). Aeolian Co. of Missouri v. Boyd, Mo.App., 65 S.W. 2d 111; 45 Yale Law Journal, p. 1313. The rules relating to rescission apply only to voidable, and not to void, contracts. 17 C.J.S., Contracts, § 413, p. 899; Moses v. Carver, 164 Misc. 204, 298 N.Y.S. 378; Union Central Life Insurance Co. v. Thomas, 46 Ind. 44. "Rescission" contemplates a contract which, although voidable, is nevertheless in existence. In the case at bar the contract for the sale of the business was void, and not merely voidable. The consideration was partly illegal, because it involved the delivery of a motor vehicle without the passage of a duly assigned certificate of ownership, which § 301.210, supra, condemns as fraudulent and void. Since the truck and its peculiar equipment was indispensable to the operation of the business, and constituted by far the greater portion of the consideration, the invalid provisions were inseparable from the valid provisions of the contract, as a result of which the entire contract was invalid. Hagler v. City of Salem, 333 Mo. 330, 62 S.W.2d 751. A void contract has no existence. In such case there is no contract to rescind or to affirm, and there is no inconsistency in the act of the defrauded purchaser in abandoning such a transaction, refusing to perform further, tendering to the seller that which he has received, and suing for the recovery of that with which he has parted and incidental damages resulting from the seller's fraud and deceit. The basis of the liability in such case is that of tort, and not breach of warranty. We therefore conclude that in form and substance Instruction No. 6 correctly stated the measure of damages applicable in this particular case.
Parenthetically, the illegality of the contract to which he was a party does not prevent plaintiff from suing for the relief demanded, because the contract, although declared by statute to be fraudulent and void, was malum prohibitum, and not malum in se, since it does not involve any act of moral turpitude. 17 C.J.S., Contracts, § 278c, p. 667. It falls within the class of those contracts which permit of repudiation while yet executory.
In Gash v. Mansfield, Mo.App., 28 S.W.2d 127, relied on heavily by defendant, the petition and measure of damages instruction were strikingly similar to those in the case at bar, and the instruction was held improper. The case, however, is distinguishable. The facts were different in at least three respects: The contract was fully executed and not executory merely, the contract was at worst voidable, and not void, and there was neither allegation nor proof of rescission or tender or offer to return *112 the contract obtained, or demand for the return of the money. Repudiation and restitution or offer to return are essential elements of a cause of action of this kind. Where the contract is void, as in the case at bar, the defrauded purchaser must perform the same acts which in the case of a voidable contract would amount to a rescission, i. e., he must repudiate and disaffirm the transaction, and tender or offer to restore to the seller that which he has received. He cannot retain the benefits received in the course of the void transaction and at the same time recover that with which he has parted. It is true that plaintiff in the case at bar failed to plead repudiation of the transaction upon discovery of the fraud and tender or offer to return the truck and equipment to defendant. His failure to do so was not fatal in this case, however, because of the provision of section 509.500 RSMo 1949, V.A.M.S., that "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Plaintiff introduced evidence of repudiation and tender which was not objected to by defendant. Defendant likewise testified with reference thereto, at first denying but finally conceding that within 30 to 60 days after May 18 plaintiff offered to return the truck to defendant upon return of the $2,000. Under such circumstances the appellate court will look upon the pleading as having been amended and will consider that the fact had been pleaded. Scott v. Missouri Ins. Co., Mo.App., 246 S.W.2d 349, and cases cited, syllabus No. 8.
It is likewise true that plaintiff's main verdict-directing Instruction No. 1 did not require the jury to find that plaintiff, upon discovery of the fraud, promptly repudiated the transaction and tendered or offered to return the truck to defendant. Such findings should have been incorporated therein, but the matter is not before us for decision in view of the fact that no error was assigned by defendant with respect to this omission.
We find no merit in the contention that the court erred in modifying Instruction No. 4. Obviously if the jury found for plaintiff under Instruction No. 1 it could not find for defendant under Instruction No. 4, and it was not error to so advise the jury.
Nor do we find any error in the remarks of the trial judge following the voluntary statement of defendant's witness that "If you don't have a piece of paper, that doesn't mean that you don't have title to it." The court remarked that the question was simply whether he had a certificate of title, and admonished the witness to answer the question, observing that it was not for the witness to concern himself "whether it is in this case or not." Defendant contends that the judge's remark withdrew from the consideration of the jury the distinction between "title" and "certificate of title." In view of section 301.210, supra, the only "title" pertinent to the inquiry was the certificate of title. The court's observation was consistent with the law and the admonition to the witness, who had undertaken to express his own conclusion as to a matter of law, was proper.
Nor did the court err, after sustaining plaintiff's objection to the introduction of exhibits offered by defendant to prove when and from whom he acquired the truck and the price defendant paid for the truck, in stating: "I think there is no dispute as to its value. I am going to rule it out. There is no issue as to the value of your equipment." Since the measure of damages was not the difference between the value of the property as represented and the actual value of the property at the time of the sale, the remark correctly stated the law and could not have been prejudicial.
No error appearing, the judgment should be affirmed, and the Commissioner so recommends.
PER CURIAM.
The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.
The judgment of the circuit court is, accordingly, affirmed.
BENNICK, P. J., and ANDERSON and ARONSON, JJ., concur.