MANCHESTER INSURANCE & INDEMNI-
TY COMPANY, a corporation,
Plaintiff-Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, a cor-
poration, et al., Defendants,

State Farm Mutual Automobile Insurance
Company, a corporation, Floyd E. Wilson
and Joyce M. Cash, Defendants-Respond-
ents.

No. 33619.

St. Louis Court of Appeals,
Missouri.

Oct. 27, 1970.

Rehearing Denied Nov. 30, 1970.

Goldenhersh & Newman, St. Louis, for
plaintiff-appellant.

Holtkamp & Amelung, St. Louis, for de-
fendant Federated Mutual & Dreier Motor
Co.

Carter, Brinker & Doyen, Friedman, Lawson & Burns, Clayton, for defendants-respondents.

CLEMENS, Commissioner.

The ultimate issue in this declaratory judgment action is which of two insurers had coverage on a recently traded 1962 Chrysler. It was being driven by Charles E. Cash at the time of a one-car collision in which he and a passenger were killed. The coverage issue turns on the Chrysler ownership, complicated by the fact that the original certificate of title had disappeared, leaving no documentary evidence that title had been assigned to Mr. Cash.

State Farm Mutual Automobile Insurance Company had insured the Chrysler for the original owner, Floyd E. Wilson, and State Farm's coverage hinges on whether Wilson still owned the Chrysler and Mr. Cash was driving it as Wilson's permissive user. Manchester Insurance & Indemnity Company had insured a 1958 Dodge owned by Mr. Cash and Manchester's coverage depends on whether Mr. Cash owned the Chrysler as a newly acquired replacement vehicle for the Dodge.

We must decide whether Wilson's ownership of the Chrysler was proven by the recorded certificate of title in his name, or instead that Cash's ownership was proven by parol evidence Wilson had assigned the title certificate to a dealer who had then reassigned it to Cash.

In January of 1965 Mr. Cash owned a 1958 Dodge, insured by Manchester. He arranged with the Dreier Motor Company in Flat River to trade the Dodge in on the 1962 Chrysler recently owned by Floyd E. Wilson and insured by State Farm. A dispute exists as to whether Mr. Cash got an assigned certificate of ownership to the Chrysler; there is no evidence he applied for or received a new certificate as called for by § 301.210, subd. 2, V.A.M.S. A week after Mr. Cash got the Chrysler it overturned, killing both him and a passenger, James Brooks. Mr. Brooks' widow brought a wrongful death action against the Cash estate. State Farm and Manchester both declined to defend, each contending the other had coverage.

Manchester contended Mr. Cash never received title to the Chrysler so it was not a newly acquired replacement vehicle under its policy on the Dodge; that Mr. Wilson was still the record owner of the Chrysler and Mr. Cash was driving it with Wilson's implied consent so the accident came within the omnibus clause of State Farm's policy. In turn, State Farm contended Wilson's certificate of title had in fact been assigned and delivered to Mr. Cash so Mr. Wilson no longer owned the Chrysler and could not consent to Mr. Cash driving it; that the Chrysler was a newly acquired vehicle under Cash's policy with Manchester.

To recap, the coverage issue turns on the Chrysler ownership. If Mr. Wilson still owned the Chrysler and impliedly had given Mr. Cash permission to drive it then State Farm is liable under the omnibus clause of its policy on the Chrysler. Conversely, if Mr. Cash had acquired the Chrysler ownership Manchester is liable under the newly acquired replacement vehicle clause of its policy on the Dodge.

Although denying its own coverage and asserting State Farm's, Manchester did assume defense of Mrs. Brooks' wrongful death action against the Cash estate. The case was settled and Manchester paid Mrs. Brooks $3,500. Manchester then brought this action for a judgment declaring State Farm was liable and seeking to recover from State Farm the $3,500 plus $975 expenses paid to dispose of Mrs. Brooks' wrongful death action against the Cash estate.

After the declaratory judgment case was submitted Judge Michael F. Godfrey denied Manchester's prayers for relief, made findings of fact, and filed a persuasive memorandum opinion supporting the judgment, a practice most helpful on appeal. Our own findings of fact and our opinion closely follow Judge Godfrey's conclusions.

We trace the links in the chain of ownership.

In 1962 Floyd Wilson bought the Chrysler new from a dealer in Kennett. A certificate of title was issued in Wilson's name but it was sent to and held by his mortgagee, the First State Bank of Caruthersville. About January 15, 1965 Wilson bought a new Cadillac from the Dreier Motor Company, arranging to pay for it in money and by trading in the 1962 Chrysler, on which the Bank of Caruthersville still had a lien. Mr. Dreier promptly paid off Wilson's mortgage and the Bank of Caruthersville sent Wilson's original title directly to Dreier. A question arises about whether Wilson assigned the Chrysler title certificate to the Dreier Motor Company. Wilson testified that soon after he traded the Chrysler for the Cadillac a Mr. Montgomery, a notary public and Dreier's sales manager, brought to his office "a lot of papers" concerning both cars; Wilson signed them all but did not specifically recall the Chrysler title certificate. At trial time Mr. Montgomery was no longer a Dreier employee and did not testify. Mr. Dreier testified, however, that he had seen the Chrysler title certificate bearing Wilson's assignment to the Dreier Motor Company. Dreier fortified this by saying that a few days later he applied for a floor-plan loan on five cars, including the Chrysler; to establish his ownership he sent the title certificates to the lender, who made the loan and returned the title certificates. From all this we find, as did the trial court, that Floyd Wilson did in fact assign the Chrysler title certificate to the Dreier Motor Company.[1]

■ This leads us to the second link in the ownership chain: Did Dreier reassign the Chrysler title certificate to Charles Cash? If so, ownership passed immediately to Cash even though there is no evidence he applied for a new title certificate in his name. Such new certificate when issued "is merely evidence of the title which the buyer has previously acquired by virtue of the assignment and transfer to him of the original certificate." Crawford v. General Exchange Ins. Corporation, Mo.App., 119 S.W.2d 458 [1–4].

The evidence concerning this second link in the chain of title: On February 11, 1965, Mr. Cash and Mr. Dreier negotiated a trade-in of Cash's 1958 Dodge for the 1962 Chrysler. Cash signed a purchase order for the Chrysler and the following day executed a chattel mortgage on it in favor of the Dreier Motor Company. Mr. Dreier did not "handle the paperwork" on the rest of the transaction but his business record entry—a file folder on the Chrysler transactions—bore a notation "Title and application picked up by C. Cash, 2/16/65," initialed by Georgia Hager, Dreier's bookkeeper. Charles Cash was killed three days later. His widow Joyce Cash never saw the title certificate. She thoroughly searched their home and her husband's effects—to which his family had had prior access—but she could not find it. From all this we find, again as did the trial court, that the Dreier Motor Company did in fact reassign the Chrysler title certificate to Cash.

■ As said, Manchester contends Floyd Wilson, State Farm's insured, was still the lawful owner of the 1962 Chrysler because record title was in his name at the time of the accident. Manchester fortifies this contention by the fact that in May of 1965, four months after Wilson left the Chrysler with Dreier, Wilson made a lost title application and a duplicate title certificate was issued in his name. Wilson then executed an assignment to Dreier who in turn executed a reassignment to Charles E. Cash although Cash had been dead three months. Superficially, Wilson's application for a duplicate title certificate bears out Manchester's contention that Wilson owned the Chrysler at that time. It is readily apparent, however, that these post-accident

---

1. As a registered dealer Dreier did not need to apply for a new title certificate on a used car as is required in sales between individuals; a dealer may retain an assigned certificate and then reassign it to a buyer. See § 301.200 V.A.M.S. and Pearl v. Interstate Securities Co., 357 Mo. 160, 206 S.W.2d 975 [9].

title transactions were but a shallow subterfuge: After the fatal collision Mrs. Cash, as her husband's heir, wanted to sell the Chrysler salvage but because the original title certificate had disappeared she needed a duplicate. She could hardly apply for a lost title certificate herself because her husband had never applied for a title and the last recorded title still stood in Wilson's name. Mrs. Cash went to Mr. Dreier for help and he offered a solution of sorts. He first prepared a lost title application in Wilson's name and as an accommodation to Mrs. Cash, Wilson signed it. When Wilson got the duplicate title certificate he assigned it to Dreier who in turn reassigned it to Mr. Cash. This enabled Mrs. Cash to sell the Chrysler wreckage. All this was improper but it was merely a subterfuge that helped Mrs. Cash and hurt no one, certainly not Manchester. These belated title transactions do not detract from the persuasive parol evidence that by executed assignments on the original title certificate the Chrysler's ownership had already passed from Wilson to Dreier and from Dreier to Cash.

■ Manchester vigorously contends Wilson was the owner at the time of accident simply because the Chrysler title was then registered in his name. Manchester invokes the best evidence rule to bar consideration of all parol testimony about Wilson's assignment to Dreier and Dreier's reassignment to Cash. Manchester points to our opinion in Schwarz v. Gage, Mo.App., 417 S.W.2d 33 [8, 9], holding that the best evidence rule barred parol evidence about the contents of a certificate of title, but note the stated qualification: "Absent a showing that the certificate was unavailable, it was error to permit parol testimony." In contrast to the Schwarz case, here the certificate's absence was explained. More akin to our case is Thurman v. St. Louis Public Service Co., Mo., 308 S.W.2d 680 [10, 13], holding that where a driver's license could not be produced it was proper to let a police officer testify about an entry concerning eyeglasses he

had seen on the license. This illustrates the host of cases admitting secondary evidence to prove the contents of missing documents, both private and public. See cases cited in 12 Mo.Dig., Evidence, ☞ 178.

■ True, Missouri is a "title state" and by § 301.210, V.A.M.S., the attempted sale of a used car without assigning the title certificate is void. We are cited no authority, however, holding that a title certificate itself is the *sine qua non* of ownership. To the contrary, the title certificate is but prima facie evidence of ownership and is vulnerable to rebuttal. Dee v. Sutter, Mo. App., 222 S.W.2d 541 [4]; Wilks v. Stone, Mo.App., 339 S.W.2d 590 [3]. And see numerous supporting cases from other states collected at § 417.5, Blashfield Automobile Law and Practice, 1968 Edition. Here, the secondary evidence of proper assignments on the original certificate of title clearly rebutted prima facie ownership by record owner Floyd E. Wilson.

■ To sum up the ownership issue, we hold that Floyd E. Wilson duly transferred ownership of the 1962 Chrysler to Dreier Motor Company who in turn transferred it to Charles E. Cash. Since Cash owned the Chrysler at collision time, Cash was not Wilson's permissive user and the trial court properly denied Manchester's prayer for a declaratory judgment that State Farm was liable as Floyd E. Wilson's insurer for damages caused while Cash was operating the Chrysler. We affirm that part of the judgment.

■ To clarify our disposition of this appeal we have postponed mention of another facet of the case: As Charles Cash's widow and heir Joyce Cash counterclaimed against Manchester for property damage to the Chrysler under the newly acquired replacement vehicle clause of Manchester's policy on the Dodge. The trial court gave her judgment against Manchester for $2,145, the undisputed amount of damage. As said, during the week before his death Charles Cash had traded his 1958 Dodge for the 1962 Chrysler. Manchester's coverage

on the Dodge included property damage to a newly acquired replacement vehicle.

Manchester's defense to Mrs. Cash's property damage counterclaim is Charles Cash's asserted lack of insurable interest in the Chrysler, citing Moore v. State Farm Mutual Automobile Insurance Company, Mo.App., 381 S.W.2d 161. This contention is bottomed on Manchester's theory that Charles Cash did not own the Chrysler. We have already ruled that point, holding ownership had passed to Mr. Cash. This gave him an insurable interest in the Chrysler, even though he had not acquired a new title certificate in his own name. Crawford v. General Exchange Insurance Corporation, supra. The trial court properly gave Joyce Cash judgment on her property damage counterclaim against Manchester.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion by CLEMENS, C., is adopted as the opinion of this court. Accordingly, the judgment is affirmed.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.