**Dorothy CASE, Plaintiff-Appellant,**

**v.**

**UNIVERSAL UNDERWRITERS INSURANCE COMPANY, Defendant-Respondent.**

**No. 9942.**

Missouri Court of Appeals, Springfield District.

March 12, 1976.

Motion for Rehearing or To Transfer to Supreme Court Denied March 25, 1976.

Application To Transfer Denied April 14, 1976.

Donald W. Jones, Prewitt, Jones & Karchmer, Russell G. Clark, Woolsey, Fisher, Clark, Whiteaker & Stenger, Springfield, for plaintiff-appellant.

B. H. Clampett, William D. Powell, Daniel, Clampett, Ellis, Rittershouse & Dalton, Springfield, for defendant-respondent.

Before BILLINGS, C. J., and TITUS and FLANIGAN, JJ.

BILLINGS, Chief Judge.

Suit in equity under § 379.200, RSMo 1969, to reach and apply insurance money to satisfy a judgment. Appellant Dorothy Case had obtained a $45,000 judgment against Jon Devine for personal injuries arising from a vehicular collision involving a 1965 Corvair automobile driven by Jon Devine. In this suit the trial court concluded Devine was the lawful owner of the Corvair at the time of the collision and respondent's garage liability policy, issued to Frank Dreier Pontiac-Cadillac, afforded no coverage on the Corvair. We conclude otherwise and reverse and remand for entry of judgment in favor of appellant.

The case was submitted to the trial chancellor on the pleadings, stipulation, exhibits and depositions. Our review is upon the law and evidence [Rule 73.01], and being de novo, we reach our own conclusions therein and give such judgment as should

have been given if we decide the lower court's judgment is erroneous. Rule 84.14. Credibility of witnesses is not here involved and the rule of deference mandated by Rule 73.01 is not applicable. *Meyers v. Smith*, 375 S.W.2d 9 (Mo.1964); *Mid-Continent Nat'l Bank v. Bank of Independence*, 523 S.W.2d 569 (Mo.App.1975); *Smith v. Thomas*, 520 S.W.2d 132 (Mo.App.1975).

In order to arrive at the controlling issue in this appeal, a history of the various transactions involving the 1965 Corvair is necessary.

1. August 20, 1966, William M. Whitaker purchased the used Corvair from the Turner Chevrolet Agency for his son, William M. Whitaker, Jr. Because the son was either under age or had no prior credit standing with General Motors Acceptance Corporation [GMAC], the sale was made to Mr. Whitaker. The father signed the note and security agreement for the Corvair, and the certificate of title [No. 356427] was duly assigned and delivered by the dealer to William M. Whitaker. A new certificate of title [No. 5655949], describing William M. Whitaker as the registered owner of the Corvair and GMAC as lien holder, was issued by the Missouri Department of Revenue. This certificate of title was forwarded to GMAC in St. Louis and remained there until *August 7, 1969.*

2. May 16, 1969, William M. Whitaker, Jr., took the Corvair to the Frank Dreier Pontiac-Cadillac Agency at Flat River and traded it for a later model car. As a part of this transaction, the agency agreed to pay the balance owing GMAC. Whitaker, Jr., delivered the Corvair to the agency at the time and took possession of the later model car. The Corvair was placed on the agency's used car lot for sale. The William M. Whitaker certificate of title was not assigned and delivered at the time the Corvair was delivered to Frank Dreier Pontiac-Cadillac.

3. July 26, 1969, Jon Devine, a minor employed by Frank Dreier Pontiac-Cadillac, purchased the Corvair from his employer and was given possession of the car. No certificate of title to the Corvair was delivered to Devine.

4. August 4, 1969, Frank Dreier Pontiac-Cadillac paid GMAC the balance due on William M. Whitaker's note.

5. August 7, 1969, GMAC released its lien on the Corvair and mailed the William M. Whitaker certificate of title [No. 5655949] to Frank Dreier Pontiac-Cadillac.

6. August 8, 1969, the assignment portion of the certificate of title was signed with the name of "William M. Whitaker" and notarized as of that date. The re-assignment by a registered dealer portion of the certificate of title shows an assignment by Frank Dreier Pontiac-Cadillac to Jon Devine dated and notarized on *July 24, 1969,* and shows a lien in favor of the agency under date of July 4, 1969. This certificate of title was forwarded to the Department of Revenue in Jefferson City. The same notary public, an employee of Frank Dreier Pontiac-Cadillac, took both acknowledgements.

7. August 29, 1969, a new certificate of title [No. A847644] to the Corvair, describing Jon Devine as owner and Frank Dreier Pontiac-Cadillac as lien holder, was issued by the State of Missouri and mailed to the agency.

Other facts considered by the trial court in ruling the case and not in dispute are as follows:

(a) William M. Whitaker, the father, was described as the registered owner of the Corvair on certificate of title No. 5655949 and never assigned the certificate of title to Frank Dreier Pontiac-Cadillac.

(b) William M. Whitaker, Jr., had exclusive use and possession of the Corvair from the time it was purchased until traded to Frank Dreier Pontiac-Cadillac. Whitaker, Jr., made all the payments to GMAC until the Corvair was traded to Frank Dreier Pontiac-Cadillac.

(c) Jon Devine agreed to purchase the Corvair from Frank Dreier Pontiac-Cadillac

on July 24, 1969, for $695 and was to pay this sum by his employer withholding $15 per week from his salary.

(d) An application for title for the Corvair, showing Devine as purchaser and the agency as a lien holder as of July 4, 1969, and requesting the new certificate of title be mailed to Frank Dreier Pontiac-Cadillac, was prepared by that agency on July 26, 1969. Devine signed the application for title and took copies of it to the local branch office of the Department of Revenue where he paid sales tax and fees and was issued license plates for the car. The document was forwarded to Jefferson City and placed in a "suspense file" to await receipt of the lien perfection copy of the application for title and the outstanding certificate of title to the Corvair [No. 5655949].

(e) Jon Devine had exclusive use, control and possession of the Corvair from July 26, 1969, and was driving the car when the collision in which appellant was injured occurred on September 11, 1969. Thereafter, Devine rescinded his purchase of the car, and Frank Dreier Pontiac-Cadillac took possession of the wrecked car and withheld no further payments from Devine's salary.

(f) In Devine's negotiations for purchase of the Corvair his employer never discussed or mentioned the assignment of a certificate of title to him and he never saw or received one.

It was and is appellant's theory that at the time of the collision Devine was not the owner of the Corvair because there had been no delivery of a properly assigned title by William M. Whitaker at the time the car was delivered to Frank Dreier Pontiac-Cadillac as required by § 301.210, RSMo 1969, and thus the Corvair was covered under respondent's garage liability policy. Alternatively, appellant contends there was no proper assignment of the certificate of title from the agency to Devine. Under either theory, appellant claims Devine was not the owner of the Corvair but was driving it with the permission of respondent's insured.

Respondent urges that Devine, by reason of the various matters heretofore enumerated, was the owner of the Corvair because the State of Missouri had so described him in the August 29, 1969, certificate of title and judicial inquiry into the fact of lawful ownership is therefore foreclosed.

The trial court made and entered findings of fact and conclusions of law. In our view the determinative finding is the conceded fact that the registered owner of the Corvair, William M. Whitaker, never assigned the certificate to anyone. The court proceeded on the erroneous premise that young Whitaker was the owner of the Corvair within the meaning of the statute and an assignment by him to Frank Dreier Pontiac-Cadillac was sufficient. This, however, ignores the fact that William M. Whitaker was the registered owner of the vehicle; and secondly, there is no evidence that young Whitaker assigned the title.

§ 301.210(4), RSMo 1969, provides: "It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless at the time of the delivery thereof, there shall pass between the parties such certificate of ownership with an assignment thereof, as herein provided, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be *fraudulent and void*." (emphasis added).

To be a valid assignment within the meaning of the statute the form prescribed by the Director of Revenue and found on the reverse side of the certificate of ownership, must be completed, signed by the registered owner, and duly acknowledged before a qualified notary public. *Pearl v. Interstate Securities Co.*, 357 Mo. 160, 206 S.W.2d 975 (1947).

The mandatory requirements of § 301.210 are intended to hamper traffic in stolen vehicles and to reduce fraud and deceit in the sale of used cars. *State v.*

*Glenn,* 423 S.W.2d 770 (Mo.1968); *Fawley v. Bailey,* 512 S.W.2d 477 (Mo.App.1974). To accomplish this end, the General Assembly has declared that attempted sales of automobiles in violation of the statute are "fraudulent and void." The Department of Revenue cannot always determine if the statute has been duly complied with by an examination of the documents which must be filed in order to obtain a certificate of title, and it would be contrary to the will of the Legislature to declare that the issuance of a certificate of title gives validity to a transaction it has made void. The Missouri courts have held that a certificate of title is only prima facie evidence of ownership which may be rebutted. *Manchester Ins. & Ind. Co. v. State Farm Mut. Auto. Ins. Co.,* 460 S.W.2d 305 (Mo.App.1970); *Melugin v. Imperial Cas. & Ind. Co. of Omaha, Neb.,* 344 S.W.2d 144 (Mo.App.1961); *Wilks v. Stone,* 339 S.W.2d 590 (Mo.App.1960); *Crawford v. General Exchange Ins. Corp.,* 119 S.W.2d 458 (Mo.App.1938).

To accept the certificate of title as conclusive proof of ownership would allow it to become an instrument of the fraud and deceit the statute was intended to prevent. For example, in *Fawley v. Bailey,* supra, Fawley's truck and certificate of title were stolen. The thief sold the truck to a dealer who notarized an assignment of the certificate of title, to which the thief had signed Fawley's name, with the name of the assignee left blank. The dealer sold the truck to a second dealer who inserted his company's name as assignee in the assignment signed by the thief. The second dealer then acquired a new certificate of title in his company's name even though he knew the title had not been assigned in the manner required by the statute. We held that title to the truck had not passed because of the failure to properly assign the certificate of title and allowed Fawley to recover the value of his truck.

Numerous decisions have held that an attempted sale of a used car is absolutely void and passes no title whatsoever unless there is strict compliance with the require-ment of the statute that a properly assigned certificate of title pass to the buyer "at the time of delivery" of the motor vehicle. *National Indemnity Co. v. Liberty Mut. Ins. Co.,* 513 S.W.2d 461 (Mo.1974); *State v. Glenn,* 423 S.W.2d 770 (Mo.1968); *Bonnell v. Mahaffey,* 493 S.W.2d 688 (Mo. App.1973); *Bank of Jasper v. Langford,* 459 S.W.2d 97 (Mo.App.1970); *Moore v. State Farm Mut. Auto. Ins. Co.,* 381 S.W.2d 161 (Mo.App.1964).

Other cases have held the statute was satisfied if the delivery of the title certificate was "reasonably contemporaneous" with the delivery of the motor vehicle. *State Farm Mut. Auto. Ins. Co. v. MFA Mut. Ins. Co.,* 485 S.W.2d 397 (Mo.banc 1972); *Bank of Jasper v. Langford,* supra; *McIntosh v. White,* 447 S.W.2d 75 (Mo.App. 1969); *Galemore v. Mid-West National Fire & Cas. Ins. Co.,* 443 S.W.2d 194 (Mo.App. 1969); *Kahn v. Lockhart,* 392 S.W.2d 30 (Mo.App.1965).

"At the time" has also been interpreted to mean "a series of acts which, taken together, constitute one continuous transaction". *Ashby v. National Bond Finance Company,* 343 S.W.2d 218 (Mo.App.1960); *World Investment Co. v. Kolburt,* 317 S.W.2d 697 (Mo.App.1958); *Saffran v. Rhode Island Ins. Co. of Providence R. I.,* 141 S.W.2d 98 (Mo.App.1940).

Here, we have a situation where William M. Whitaker, Sr., admittedly the person described in the certificate of title as the registered owner of the Corvair, never completed the assignment form or subscribed his name thereto at the time the Corvair was delivered to Frank Dreier Pontiac-Cadillac, nor at any subsequent time. This transaction was, in the language of the statute, "fraudulent and void."

The second sale of the Corvair, from the automobile agency to Jon Devine, a separate and distinct transaction, fares no better. Without a proper assignment from William M. Whitaker, Sr., there could not be a valid re-assignment by Frank Dreier Pontiac-Cadillac to purchaser Jon Devine,

aside from the fact that the certificate of title did not accompany the delivery of the car to Devine "at the time", "reasonably contemporaneous", or as "one continuous transaction".

We need not speculate as to the identity of the person who affixed the registered owner's name to the certificate of title under date of August 8, 1969, nor tarry over the fact the document shows a reassignment predating the purported assignment to the agency. This abortive assignment cannot breathe life into the first transaction wherein Frank Dreier Pontiac-Cadillac took possession of the Corvair following the trade of vehicles with young Whitaker.

The respondent strongly urges that under the decisions of *National Indemnity Company v. Liberty Mutual Insurance Company*, 513 S.W.2d 461 (Mo.1974), and *Insurance Company of North America v. Alexander*, 321 F.Supp. 697 (E.D.Mo.1970), *aff'd sub nom. Insurance Company of North America v. Schaefer*, 441 F.2d 1170 (8th Cir. 1971), there was constructive delivery of the certificate of title to the Corvair by Frank Dreier Pontiac-Cadillac to Devine. Further, following this constructive delivery of the certificate of title the State of Missouri issued a new title certificate in Devine's name as owner, and thus he was the lawful owner of the Corvair at the time of the collision.

We have carefully examined the foregoing cases and conclude they have no application to the factual situation before us. In both cases there had been proper assignments by the registered owners and delivery of the certificates of title to the dealers. The dealers had properly re-assigned the certificates of title to the purchasers, and *with the knowledge and consent* of the purchasers delivered the properly assigned certificates to the lending institutions financing the purchases. By reason of the purchasers' acquiescence in this mode of delivery of the properly assigned title certificates, the court in each case held there had been compliance with § 301.210 by virtue of constructive delivery of the title certificates

at the time the purchasers were delivered possession of the vehicles.

In our view the rule followed in *Greer v. Zurich Insurance Company*, 441 S.W.2d 15, 23 (Mo.1969), and the cases cited therein, is decisive here: "'The requirements of § 301.210 are definite and positive; and strict compliance is required by our decisions (hereinabove cited) to pass title to any motor vehicle. Therefore, we hold that until the certificate of title properly assigned is delivered by the seller to the buyer the buyer does not become the owner. We further hold that, when the seller delivers a motor vehicle to the buyer without delivering to him the certificate of title, he is permitting the buyer to use the vehicle so as to make him an additional insured, under the policy provision herein involved, until title passes to him.'"

■ Applying the foregoing rule to the facts at hand, we must conclude the first transaction between young Whitaker and Frank Dreier Pontiac-Cadillac did not comply with § 301.210, nor did the sale by the agency to Devine. In neither transaction was there a delivery of a properly assigned certificate of title by the registered owner of the Corvair.

The provisions of respondent's policy in the instant case are nearly identical to the provisions examined by the Supreme Court in the *Greer* case. There, after tracing the various sales of the automobile in that case without the delivery of a properly assigned certificate of title, the court held the policies of the different sellers afforded coverage to the last purchaser as a permissive user of the car.

With commendable candor, counsel for respondent, both in their brief and in oral argument, acknowledge the general rule found in Couch on Insurance 2d, Vol. 12, § 45:386, and cited and followed in *Greer*, to-wit:

"For the purpose of the application of an omnibus clause there is authority that a sale has no legal significance where the title has not been technically transferred, al-

though in all other respects the sale is complete. In such circumstances the seller remains the owner and therefore has the power to give permission to the buyer to use the car, and such permission brings the latter within the scope of an omnibus clause."

In this appeal respondent has sought to avoid the application of the foregoing rule by taking the position that the issuance of a new certificate of title to the Corvair in Devine's name by the Department of Revenue vested him with legal ownership of the automobile. As we have demonstrated, such is not the case and we hold Devine was a permissive user of the Corvair and, as such, was an insured under respondent's policy issued to Frank Dreier Pontiac-Cadillac.

The judgment is reversed and the case remanded with directions that judgment be entered in favor of appellant Dorothy Case and against respondent Universal Underwriters Insurance Company.

All concur.