**JERRY RIVERA, Plaintiff**

**v.**

**NATIONAL CAR RENTAL SYSTEM, INC. and THE TRAVELERS INSURANCE COMPANIES, Defendants**

Civil No. 1977-222

District Court of the Virgin Islands

Div. of St. Croix

February 28, 1978

JEFFREY L. RESNICK, ESQ. (JAMES & RESNICK), Christiansted, St. Croix, V.I., *for plaintiff*

DAVID V. O'BRIEN, ESQ. (MERWIN, ALEXANDER & O'-BRIEN), Christiansted, St. Croix, V.I., *for defendants Travelers & National*

JAMES W. DIEHM, ESQ. (ISHERWOOD, COLIANNI, ALKON & BARNARD), Christiansted, St. Croix, V.I., *for intervenor Emanuel Drew*

CHRISTIAN, *Chief Judge*

### MEMORANDUM AND ORDER

In this action for a declaratory judgment, the question presented is whether the purported buyer of a used automobile was an insured under the omnibus clause of the seller's insurance policy. Plaintiff as well as defendants seeks summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons developed

below summary judgment will be granted in favor of plaintiff.

The facts relevant to this determination are as follows: On March 23, 1975, National Car Rental Systems, Inc. (hereinafter National), was the registered owner of a 1974 Chevrolet Nova automobile. On that date National sold this automobile to plaintiff Rivera, accepted the purchase price and delivered the vehicle to plaintiff. National signed the vehicle transfer registration but failed to have it notarized. Moreover, National neglected to register the change in ownership with the Commissioner of Public Safety as required by 20 V.I.C. § 335(a). Several months later, on October 18, 1975, the automobile, still being officially registered to National and while operated by plaintiff, was involved in an accident.

A Mrs. Emily Drew died as a result of injuries sustained in this accident. Emily Drew's representative filed suit against Rivera and National. Rivera, in turn, instituted this Declaratory Judgment action. The Drew representative joins plaintiff in his motion for summary judgment.

The central question affecting the outcome of this proceeding is whether at the time of the accident, the Nova automobile was owned by National and therefore within the coverage of its insurance policy with Travelers Insurance Company. The resolution of this question depends on the legal effect of 11A V.I.C. § 2—401 and 20 V.I.C. § 335 on the March 23, 1975, transaction. There being no issues as to any material fact remaining to be decided, summary judgment is appropriate. Fed. R. Civ. P. 56; United States v. J. B. Williams Co., 498 F.2d 414 (2d Cir. 1974); Donnelly v. Guion, 467 F.2d 290 (2d Cir. 1972); Cardwell v. Wilson Freight Forwarding Co., 322 F.Supp. 43 (W.D. Pa. 1971).

The Uniform Commercial Code, as codified at Title 11A of the Virgin Islands Code, determines the trans-

fer of title to goods generally. Motor Inc. Corp. v. Safeco Ins. Co., 412 S.W.2d 584 (Ky. 1967). 11A V.I.C. § 2—401(2) provides in pertinent part that:

Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and event though a document of title is to be delivered at a different time or place . . . .

Although the law of sales, and § 2—401 in particular, is properly considered when determining ownership of personal property for purposes of insurance coverage, this is not the case with automobile sales where there is special legislation governing the transfer and operation of motor vehicles. Citizens Discount & Invest. Corp. v. Wood, 435 S.W.2d 717 (Mo. App. 1968). However, unless the statute regulating the transfer or operation of the vehicle declares that noncompliance with its provisions makes the transfer void, title to the vehicle passes upon delivery in harmony with 11A V.I.C. § 2—401. See In Re Russell, 300 F.Supp. 6 (E.D. Tenn. 1969) ; Ivanyi v. Osborne, 7 V.I. 177 (Mun. Ct. 1969) ; Anderson on the Uniform Commercial Code, Vol. 2, § 2—401:9. It is therefore necessary to examine 20 V.I.C. § 335 in order to determine whether the penalty for noncompliance with its provisions is avoidance of the transfer.

20 V.I.C. § 335(a) provides in pertinent part that:

If ownership of a motor vehicle is changed, such change shall be registered by the *vendor* with the Commissioner of Public Safety, and endorsed on the registration license. The *operation* of any motor vehicle before such registration of change of ownership has been made shall immediately make *void the license* theretofore issued, *and the property shall be considered as remaining in the vendor* . . . .(Emphasis added.)

This section does not attempt to regulate the transfer of ownership as between the parties. By its very terms § 335 becomes applicable only after a change in

ownership has been already effected. Once a change of ownership occurs, however, the seller must register such change with the Commissioner of Public Safety before the buyer is allowed to operate the vehicle on the public highways. Any operation of the vehicle prior to the registration of the changed ownership voids the license and the property "shall be considered as remaining in the vendor". Ivanyi v. Osborne, 7 V.I. 177 (Mun. Ct. 1969). Section 335 is therefore more like those mandatory statutes which courts hold must be fully complied with before a seller is released from liability, rather than those enactments which are considered mere police regulations, not affecting the transfer of title. Compare Dodson v. Imperial Motors, Inc., 295 F.2d 609 (6th Cir. 1961) ; Maryland Cas. Co. v. American Family Ins. Group, 429 P.2d 931 (Kan. 1967) ; Case v. Universal Underwriters Inc. Co., 534 S.W.2d 635 (Mo. 1976) ; Eggerding v. Bicknell, 118 A.2d 820 (N.J. 1955) ; with Universal Underwriters Insurance Company v. Wilson, 363 A.2d 627 (Md. App. 1976) ; St. Paul Fire and Marine Ins. Co. v. Boykin, 161 S.W.2d 818 (S.C. 1968) ; Mercado v. Travelers Insurance Company, 443 S.W.2d 819 (Tenn. App. 1969). Since § 335 is mandatory, and specifically places ownership[1] in the vendor where there is noncompliance with its provisions, this section rather than U.C.C. § 2—401 governs the determination of ownership for purposes of deciding liability of the owner in a personal injury action, resulting from the operation of the vehicle.[2] See Knutson v. Mueller, 228 N.W.2d 342, 346 (Wis. 1975). This is so because the clear legislative intent in enacting § 335, at least where the transfer contemplated operation of the vehicle, was to decree the transfer ineffectual, to

---

[1] The provision providing that the property shall be considered as remaining in the vendor must necessarily be interpreted as meaning that ownership and therefore title remains in the vendor.

[2] The U.C.C. is still applicable as "between the parties" to determine their other rights and liabilities which may arise under the law of sales.

the extent necessary to hold the vendor, and thereby vendor's insurance company, liable until there is full compliance with its terms. See Ivanyi v. Osborne, 7 V.I. 177, 183 (Mun. Ct. 1969). Consequently, a vendor who fails to comply with the dictates of § 335 must stand the consequences, which is, to be deemed the owner of the vehicle and be liable for any injury caused by its operation, given negligence, even though the purchase price has been paid and delivery completed.

In the case sub judice, National negotiated the sale of the vehicle with full knowledge that Rivera intended to operate the vehicle on the public highways.[3] It was incumbent upon National to comply with the registration requirements of § 335 before permitting Rivera to operate the vehicle. It follows that the moment that Rivera drove the automobile away on March 23, 1975, without the change in ownership having been registered, § 335(a) operated to maintain ownership of the vehicle in National. Since the change in ownership was not properly registered until March 23, 1976, many months after the accident, ownership of the vehicle remained in National on the date of the accident.[4] Moreover, when National allowed plaintiff to drive away the vehicle without first complying with § 335, it permitted Rivera to use the vehicle so as to make him an additional insured under the omnibus clause of the insurance policy herein involved.[5] See Harbor Ins. Co. v.

---

[3] It is not contradicted that National equipped the automobile with new tires and gasoline. This clearly shows the vehicle was sold for the purpose of driving and not for scrap or some other non-operational purpose.

[4] The September 10, 1975, list of vehicles submitted by National to the Commissioner of Public Safety, in compliance with 20 V.I.C. § 422(f), indicating that the Nova vehicle in question was no longer in its fleet, was not a registration of the change in ownership as required by § 335. This list did not indicate the name and address of the buyer as required by 20 V.I.C. § 332 (b) (3) and § 335.

[5] An insurance contract such as the one here involved "should be liberally construed for the protection, not only of the named insured and those within its omnibus clause, but also the innocent plaintiff who was injured by the negligent operation of the insured automobile along a public high-

486

Paulson, 135 Cal.App.2d 22, 286 P.2d 870 (1955); Maryland Casualty Co. v. American Family Ins. Group, 429 P.2d 931 (Kan. 1967); Case v. Universal Underwriters Ins. Co., 534 S.W.2d 635, 640 (Mo. App. 1976); State Farm Mut. Ins. Co. v. Holt, 503 P.2d 1205 (Utah 1972); Couch on Insurance 2d, Vol. 12, § 45:386. Accordingly, summary judgment in favor of plaintiff will be granted.

### ORDER

The premises considered, and the Court being fully advised,

IT IS ORDERED that plaintiff's motion for summary judgment be, and the same is hereby GRANTED:

FURTHER ORDERED that defendants' motion for summary judgment be, and the same is hereby, DENIED.

---

way". Eggerding v. Bricknell, 118 A.2d 820, 824 (N.J. 1955); see also Float-Away Door Co. v. Continental Casualty Co., 372 F.2d 701, 705 (5th Cir. 1966).