

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| TEQUEA FISHER, | ) |
| | ) |
| Respondent, | ) WD83318 |
| | ) |
| v. | ) OPINION FILED: October 20, 2020 |
| | ) |
| H & H MOTOR GROUP, LLC, | ) |
| | ) |
| Appellant. | ) |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Gregory B. Gillis, Judge

Before Division Three: Gary D. Witt, Presiding Judge, Lisa White Hardwick, Judge and
Thomas N. Chapman, Judge

H&H Motor Group, LLC ("H&H"), appeals the amended judgment of the Circuit

Court of Jackson County, Missouri ("trial court"), finding in favor of plaintiff Tequea

Fisher ("Fisher") on her claim against H&H under the Missouri Merchandising Practices

Act ("MMPA"), section 407.025.1[1], and awarding Fisher $10,728 in actual damages;

$32,184 in punitive damages; and $13,816 in attorney's fees. H&H has five points on

appeal: (1) that there was not sufficient evidence to support the trial court's finding that

H&H violated the MMPA because H&H's actions were merely "arguably negligent"; (2)

---

[1] All statutory citations are to RSMo 2016 as updated through the most recent cumulative supplement, unless otherwise indicated.

that the judgment erroneously awarded Fisher damages not recoverable under the MMPA; (3) that the trial court abused its discretion in entering judgment for Fisher after it had originally entered judgment in favor of H&H; (4) that there was not sufficient evidence to support the trial court's award of punitive damages or attorney's fees in favor of Fisher; and (5) that the trial court erred in allowing Fisher to testify that she was unable to register her vehicle because it was based upon inadmissible hearsay. We affirm, but pursuant to Rule 84.14[2] we reduce the award of actual damages to $3,528.

Fisher has also filed a motion with this court for attorney's fees on appeal which was taken with the case. This motion is well taken and was filed timely in accordance with local rules and is sustained. We remand the case to the trial court for the award of the appropriate amount of reasonable attorney's fees for work on behalf of Fisher related to this appeal, because while "appellate courts have authority to allow and fix the amount of attorney's fees on appeal, we exercise this power with caution, believing in most cases that the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested." *Soto v. Costco Wholesale Corp.*, 502 S.W.3d 38, 58 (Mo. App. W.D. 2016).

## Factual and Procedural Background

On February 23, 2017, Fisher purchased a 2003 Ford Explorer from automobile dealer H&H for $2,200. In connection with the sale, H&H gave Fisher a Certificate of Title and a Bill of Sale. The Bill of Sale was executed by Fisher and by El-Hadji Diallo,

---

[2] All rule references are to Missouri Supreme Court Rules (2020).

2

a sales representative for H&H. The Bill of Sale warranted that H&H was the lawful owner of the vehicle, stating:

> H&H Motor Group, LLC warrants and guarantees that our dealership is the true and lawful owner of this vehicle, and the vehicle is free of any liens and encumbrances. Salesmen/agent also warrants that s/he has perfect right and full power to sell and transfer title to the same, and that s/he will defend the same against the lawful claims and demands of all persons.

However, when Fisher presented the vehicle's Certificate of Title to the Missouri Department of Revenue for registration, she was not able to register the vehicle due to a defect in the title. On January 5, 2017, H&H had purchased the vehicle at an auction from the automobile dealer Riley Brothers Motors, Inc. In connection with this sale, H&H received a Certificate of Title from Riley Brothers. The Certificate of Title lists the owners of the vehicle as Samantha Phegley and Kevin Phegley, with a transfer on death to Debbie Phegley. However, the section of the Certificate of Title purporting to assign title to Riley Brothers was only signed by Samantha Phegley and not Kevin Phegley.

Fisher notified H&H that she was not able to register the vehicle in March of 2017. Fisher attempted to return the vehicle to H&H, and on March 27, 2017, she mailed a "Statement of Rescinded Sale" by certified mail that mentioned her problems titling the vehicle, among other issues. However, H&H refused to accept return of the vehicle, and employees laughed at Fisher and told her to "take them to court." Because Fisher could not register the vehicle, she could not park it on the street, and she had to store it at a storage facility.

Fisher had purchased the vehicle to use for her business, but also to take her sons to and from school and to do her shopping and personal errands. Because she was not

3

able to register the vehicle and because it had mechanical problems, Fisher could not transport her business equipment, and she lost out on a contract that she had entered into with a customer.

Fisher sued H&H, *pro se*, on April 4, 2017, praying for a full refund of the purchase price, lost wages, and punitive damages. On October 25, 2017, counsel Melika Harris entered her appearance on Fisher's behalf and filed a first amended petition alleging violations of the MMPA. The case was tried before the court on April 18, 2018. Fisher testified, as did Johnnie Prince, her business contact, and Cortez Ford, the friend who accompanied her to the dealership when she first sought to return the vehicle. Witnesses for H&H included Aziz Ba, the owner of H&H and head of its title department, and El-Hadji Diallo, the salesman who sold Fisher the vehicle. Mr. Ba testified that he had been in the used car business for almost ten years, and it was his job to obtain and review titles on behalf of H&H. He testified that the signatures of all owners were required to assign title to the vehicle, and that the title to the subject vehicle lacked the signature of Kevin Phegley, but he had not reviewed the title to the vehicle before it was sold to Fisher.

At the conclusion of the trial, the trial court stated that it would take the matter under advisement, and it instructed the parties to submit proposed findings of fact and conclusions of law. H&H filed its proposed findings and conclusions on May 18, 2018, and Fisher filed hers on May 19, 2018. On July 12, 2018, the trial court entered judgment in favor of Fisher, based on her proposed findings and conclusions, awarding her $10,728 in actual damages, $32,184 in punitive damages, and reasonable attorney's

4

fees.  This writing was signed by the judge, denominated as a judgment, and filed with the clerk of the court.  On July 17, 2018, the trial court sent an email message to counsel for the parties stating as follows:

> Good Evening Counsel:
>
> I am sending the two of you this note to advise that through an administrative error in my clerk's office, Plaintiff's Proposed Judgment was entered on July 12, 2018, at 8:59 am.
>
> While I had no knowledge that this error had been committed, I take full responsibility for the error.
>
> I have been carefully reviewing the legal issues presented at trial and I was about to draft the judgment for entry in the case this evening when I discovered that Plaintiff's Proposed Judgment had been entered without any review or edits and without my approval.
>
> This judgment will be removed upon the court's own motion as it was entered in error.  Once this judgment has been removed, the correct judgment will be entered before the end of this week.
>
> I extend my sincere apology to counsel for any inconvenience that this error may have created.
>
> Best regards,
>
> Gregory B. Gillis

The July 12, 2018 Judgment was subsequently removed from the court's electronic system.  On August 6, 2018, without notice to either party, the trial court entered an amended judgment in favor of H&H, finding that H&H did not violate the MMPA when it gave the ineffective Certificate of Title to Fisher, because "[i]t was Riley Brothers Motors who did not receive a valid assignment of the vehicle from two persons who were the previous owners."

5

On August 15, 2018, Fisher filed a notice of appeal to this Court. Upon hearing the appeal, this Court vacated the trial court's August 6, 2018 Judgment, finding that it was not a *nunc pro tunc* judgment because it did more than correct clerical errors, and, although it was entered within thirty days of the trial court's July 12, 2018 judgment, it was not proper under Rule 75.01, because Fisher was not given an opportunity to be heard as the Rule requires. *Fisher v. H&H Motor Group, LLC,* 579 S.W.3d 311 (Mo. App. W.D. 2019). The mandate provided that upon the re-entry of the prior judgment, the parties would be granted the right to file any post-trial motions and/or appeal from that judgment once it became final.

On remand, the trial court re-entered the July 12, 2018 judgment as this Court ordered, and H&H filed a timely motion to amend the judgment. Fisher filed suggestions in opposition to H&H's motion, and the trial court, without comment, denied H&H's motion to amend the judgment. On September 6, 2019, Fisher filed a motion to ascertain attorney's fees. H&H opposed the motion, and on September 13, 2019, the trial court entered an "Amended Judgment on Plaintiff's First Amended Petition for Damages in Favor of Plaintiff Tequea Fisher." On October 8, 2019, H&H filed a motion to amend this judgment, and Fisher opposed the motion. On October 30, 2019, the trial court denied H&H's motion to amend, and on November 6, 2019, H&H filed a Notice of Appeal to this Court. H&H raises the five points on appeal summarized above.

## Standard of Review

In a court-tried case, the trial court's judgment will be sustained unless it is not supported by substantial evidence, it is against the weight of the evidence, or it

6

erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "Substantial evidence is evidence that, if believed, has some probative force on each fact that is necessary to sustain the circuit court's judgment." *Ivie v. Smith*, 439 S.W.3d 189, 199 (Mo. banc 2014). "Evidence has probative force if it has any tendency to make a material fact more or less likely." *Id.* "We view all of the evidence and the reasonable inferences therefrom in the light most favorable to the judgment and disregard all contrary evidence and inferences." *Bolt v. Giordano*, 310 S.W.3d 237, 242 (Mo. App. E.D. 2010). Questions of law, we review *de novo*. *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012).

## Analysis

### *Sufficiency of the Evidence of MMPA claim*

H&H's first point on appeal is that there was not substantial evidence to support the trial court's finding that it violated the MMPA. The MMPA provides:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri, is declared to be an unlawful practice.

Section 407.020.1. H&H argues that there is no substantial evidence to support a finding that it committed any fraud, deception, or other enumerated act from the MMPA when it sold Fisher the vehicle, even though its assignment of title was ineffective, because H&H was, at most, negligent in providing Fisher with the faulty Certificate of Title, and negligence, it argues, is not sufficient to constitute a violation of the MMPA.

7

H&H relies heavily on *State v. Shaw*, 847 S.W.2d 768 (Mo. banc 1993). But *State v. Shaw*, as the name implies, is a *criminal* fraud case and was interpreting the provisions of 407.020.3. Subsection 3 of 407.020 provides that "[a]ny person who willfully and knowingly engages in any act, use, employment or practice declared to be unlawful by this section with the intent to defraud shall be guilty of a class E felony." *Shaw* involved an earlier version of this subsection, so it naturally analyzed whether Shaw's actions were willful and knowing with an intent to defraud. *Id.* at 773. But *Shaw* goes on to explain how "[t]he possibility of criminal sanctions heightens the stakes" and requires the higher and more pointed mental state to comport with due process. *Id.* at 774-75. It expressly contrasts this with civil cases arising under the MMPA, stating that "a plaintiff need not prove all the elements of fraud, nor any element of intent, in order to make a claim of unlawful merchandising practices." *Id.* at 775. "The inclusion by the legislature of the words 'unfair practices' signals a legislative intent to prohibit a much broader class of activities than those falling within the common law definition of fraud." *Id.*

Moreover, section 301.210.4 provides:

It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless, at the time of the delivery thereof, there shall pass between the parties such certificates of ownership with an assignment thereof, as provided in this section, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be presumed fraudulent and void….

This provision declares that the act of selling a motor vehicle without passing and assigning a valid certificate of title *is* fraud, regardless of intent. H&H argues that section 301.210 does not apply because it did deliver to Fisher a Certificate of Title at the time of

8

purchase. But passing on a certificate of title that was previously invalidly assigned still violates the statute. *See Case v. Universal Underwriters Ins. Co.*, 534 S.W.2d 635 (Mo. App. 1976).

In *Case*, a father purchased a car for his son who was under age or had no prior credit standing to purchase the car on his own, although the son made all of the payments. *Id.* at 637. Several years later, when the son wanted to sell the car and buy a newer model, he (the son) assigned the certificate of title over to a dealership, which then assigned the title over to an employee purchaser. *Id.* The court found that section 301.210 operated to render all of the sales and assignments fraudulent and void. *Id.* at 638. "To be a valid assignment within the meaning of the statute the form prescribed by the Director of Revenue and found on the reverse side of the certificate of ownership, must be completed, signed by the registered owner, and duly acknowledged before a qualified notary public." *Id.*

In the instant case, Plaintiff's Exhibit 1 was the Certificate of Title at issue. This document was the title which was held by the Phegleys and on the reverse side was purported to be assigned to Riley Brothers Motors Inc. by Samantha Phegley, and then reassigned by Riley Brothers to H&H Motors Group LLC and then reassigned by H&H to Tequea Fisher. None of the intervening assignees filed the title with the Department of Revenue to officially transfer title into their name, they merely continued to reassign the title held by Phegleys to each subsequent purchaser. The assignment from the Phegleys to Riley Brothers was fraudulent and void because one of the owners, Kevin Phegley did not sign the certificate of title authorizing the transfer. This rendered the subsequent

9

assignment from Riley Brothers to H&H also fraudulent and void, and the sale from H&H to Fisher fraudulent and void under the statute. This fraudulent sale constitutes a violation of the MMPA by H&H, even if H&H did not know that the certificate of title had not been properly assigned. But since Mr. Ba testified that he had been in the used car business for nearly ten years, and that he was in charge of vehicle titles for the dealership, he would easily have been able to determine that Kevin Phegley had not signed the certificate of title purporting to transfer title to Riley Brothers had he even cursorily examined the certificate.

Because there is substantial evidence in the record to support the trial court's finding that H&H violated the MMPA by selling Fisher a vehicle without passing a valid certificate of title to her, H&H's first point is denied.

### *Actual Damages under the MMPA*

H&H's second point on appeal is that the trial court erred in awarding Fisher $10,728 in actual damages. H&H correctly argues that damages under the MMPA are normally measured by the lost benefit of the bargain. *Shiplet v. Copeland*, 450 S.W.3d 433, 441 (Mo. App. W.D. 2014). This measurement seeks to approximate "the difference between the actual value of the property and what its value would have been if it had been as represented." *Id.* at 442 (quoting *Sunset Pools of St. Louis, Inc. v. Schaefer*, 869 S.W.2d 883, 886 (Mo. App. E.D. 1994)). It does not, however, apply when the purchaser rescinds the purchase and returns the property received. *Id.* at 441 (citing *Heberer v. Shell Oil Co.*, 744 S.W.2d 441, 443 (Mo. banc 1988)). When the purchaser rescinds the purchase and returns the property, the measure of damages is the return of the purchase

price, plus interest, and any incidental losses and expenses that the buyer may have suffered due to the actions of the seller. *Id*.

At trial, Fisher presented evidence that after discovering numerous mechanical issues with the vehicle and, more importantly for purposes of this case, that she was not able to title and register the vehicle, she expressly sought to rescind the purchase and offered to return the vehicle to H&H. Furthermore, in the cases where the purchaser fails to deliver valid title under section 301.210, this is the measure of damages most often used, unless the purchaser continues to use the vehicle knowing that that the seller did not deliver valid title. *See, e.g., Shiplet*, 450 S.W.3d at 442; *Peel v. Credit Acceptance Corp.*, 408 S.W.3d 191, 203 (Mo. App. W.D. 2013); *Bolt*, 310 S.W.3d at 245; *Bryant v Prenger*, 717 S.W.2d 242, 244 (Mo. App. W.D. 1986); *Schroeder v. Zykan*, 255 S.W.2d 105 (Mo. App. 1953).

Fisher purported to utilize this measure of damages in her proposed judgment, which the trial court adopted on remand. But Fisher included "damages" that cannot fairly be characterized as incidental to the purchase of the vehicle from H&H. In *Schroeder*, a man purchased a septic tank-cleaning business from another man which included a truck, tools, and the ongoing advertising initiated by the seller. *Schroeder*, 255 S.W.2d at 107-08. When the purchaser learned that the seller could not provide proper title to the truck, the largest asset of the business, he repudiated the sale. *Id.* The purchaser was able to recover the price he paid for the business plus the incidental expense of advertising he incurred to keep up the seller's ongoing advertising efforts. *Id.*

11

at 111. This expense was directly connected to the sale, and was expressly contemplated by it.

In this case, Fisher claims, and the trial court's judgment found, incidental expenses of storage for the vehicle of $1,328 and loss of expected business income due to her not having a reliable vehicle of $7,200. We agree with Fisher that the expense she incurred storing the vehicle is incidental to the purchase of the vehicle. She could not title the vehicle, and she could not park a vehicle lacking valid title and license on the city street. Thus her storage expense could be reasonably contemplated by H&H if it sold her a vehicle without valid title. However, Fisher's loss of business expectancy is further removed from the void purchase of the vehicle. At some point, lost opportunities can no longer be considered incidental to the purchase under the MMPA. Fisher provides no authority to support a finding that her lost business opportunity for a six-month period of time is the type of expense incidental to her purchase of the vehicle from H&H that is covered by this measure of damages. We find that they are not, in fact, incidental to her void purchase of the vehicle, as they were not reasonably contemplated in connection with the purchase. Because the trial court erred in including the lost business earnings in Fisher's actual damages, we reverse the award of actual damages and reduce it pursuant to Rule 84.14 to $3,528.[3]

---

[3] Pursuant to *Schroeder*, Fisher would have been entitled to interest on the $2,200, but she did not make a claim before the trial court for interest, nor did she offer any evidence of what the interest rate or amount would have been.

## Motion to Amend the Judgment

H&H's third point on appeal is that the trial court abused its discretion in denying its motion to amend the judgment on remand. H&H contends that, because the trial court originally found in its favor, and only re-entered judgment in Fisher's favor on remand because it was directed to do so by this Court, it was an abuse of discretion to refuse to again amend its judgment to find in favor of H&H. Pursuant to Rule 75.01, a trial court may "vacate, reopen, correct, amend, or modify its judgment" within thirty days after the entry of judgment for good cause after giving the parties an opportunity to be heard. The trial court's failure to allow Fisher an opportunity to be heard was the reason this Court reversed the trial court's August 6, 2018 amended judgment. On remand, H&H filed a motion to amend the trial court's judgment in favor of Fisher, arguing that it was originally entered in error, and the subsequent judgment entered prior to the previous appeal should now be properly entered. However, unlike the trial court's previous attempt to set aside the prior judgment, on remand, pursuant to our mandate, Fisher filed objections to H&H's motion to amend and set forth the reasons why she believed the judgment was proper. The trial court was not compelled to reach the same result it had previously reached. In fact, the specific reason for our remand was to allow Fisher the opportunity to be heard prior to the trial court ruling on any motion to amend the judgment.

H&H points out that, while the trial court has discretion to amend or set aside a judgment for good cause under rule 75.01, and this court will not overturn the judgment absent an abuse of that discretion, a trial court's refusal to set aside a judgment for good

13

cause is "a good deal narrower than the discretion to set it aside, and [this Court is] more likely to interfere when the trial court has denied the motion." *Cent. Am. Health Scis. Univ., Belize Med. Coll. v. Noruzian*, 236 S.W.3d 69,75 (Mo. App. W.D. 2007). The trial court did not set forth the reasons that it decided not to set aside its judgment on remand. It may have been persuaded by Fisher's arguments, which the trial court had not previously provided her with the required opportunity to raise. It may have determined that H&H was advocating for an application of the criminal standard of the MMPA to this civil matter. The trial court was not required to detail the reasons for its decision. We did find, in Point I, that the judgment in Fisher's favor properly applied the law with respect to sections 301.210 and 407.020 to the facts as found by the judgment in this case. The mere fact that the trial court's judgment on remand was inconsistent with its judgment before the first appeal does not in itself mean that the trial court's judgment after remand was an abuse of discretion. H&H's third point is denied.

### Punitive Damages

In H&H's fourth point on appeal, it argues that the trial court erred in awarding attorney's fees and punitive damages. The main thrust of H&H's argument with respect to both attorney's fees and punitive damages is that they should not have been allowed because there was insufficient evidence to support Fisher's claim that H&H violated the MMPA. Because we determined in Point I that there was sufficient evidence to support a finding that H&H violated the MMPA, Fisher was properly entitled to have the trial court consider both attorney's fees and punitive damages.

14

The version of the MMPA in effect at the time the trial court entered its judgment[4] provided that a court hearing a civil action for injury pursuant to the MMPA "may, in its discretion, award punitive damages and may award to the prevailing party attorney's fees, based on the amount of time reasonably expended. . . ." Section 407.025.1 RSMo 2016 (Cum. Supp. 2019).

"Missouri courts adhere to the 'American Rule' which states that, ordinarily, litigants must bear the expense of their own attorney's fees." *Ostermeier v. Prime Props Invs., Inc.*, 589 S.W.3d 1, 5 (Mo. App. W.D. 2019). A common exception to this rule is where, as here, the applicable statute provides for attorney's fees. *Id.* We deem the trial court an expert on attorney's fees, due to its familiarity with all of the issues in the case and the character of the legal services rendered. *Id.* at 6. This, and the discretion to award reasonable fees given to the trial court by the provisions of the MMPA dictate that we presume any award of attorney's fees under the MMPA to be correct, even if determined without the court's having taken evidence, and "[w]e will only reverse if it is shown that the award of attorney fees was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Id.* We find no such abuse of discretion in this case.

To warrant an award of punitive damages, Fisher was required to show that H&H's conduct was intentional, wanton, willful, and outrageous without justification, or that H&H acted with reckless disregard for Fisher's rights and interests. *Peel*, 408 S.W.3d at

---

[4] The MMPA has been amended, effective August 28, 2020. The substance of the statute concerning attorney's fees and punitive damages is nearly identical, but punitive damage awards are now controlled by section 407.025.2(1), and attorney's fees by section 407.025.2(2).

209-10. Fisher presented evidence that H&H acted with reckless disregard for her rights and interests. Mr. Ba testified that he had been in the used car business for almost ten years, he was aware of the requirements of the law to pass clear title, and that he was in charge of obtaining and reviewing title certificate assignments. Ba knew that all registered owners had to sign the title certificate and knew that there had been problems with titles in the past at the dealership. It was clear from the title certificate to the subject vehicle that Kevin Phegley had not signed the assignment over to Riley Brothers, and it was H&H's responsibility as a seller of used cars to make sure that they had proper title that they could properly assign. In addition, when Fisher attempted to work with the dealership to try to get a proper title and later attempted to rescind the purchase, the H&H employees laughed at her and taunted her to "take them to court." This evidence supports the trial court's determination that punitive damages are appropriate.

Because the trial court did not err in assessing punitive damages or attorney's fees, H&H's fourth point is denied.

**Admission of Testimony**

H&H's final point on appeal is that the trial court erred in allowing Fisher to testify that she was unable to register the vehicle because the testimony was based upon inadmissible hearsay. The trial court has considerable discretion in admitting or excluding evidence. *St. Louis Cnty. v. River Bend Ests. Homeowners Ass'n*, 408 S.W.3d 116, 123 (Mo. banc 2013). We will only reverse a judgment if the trial court abused its discretion in admitting testimonial evidence. *Id.*

16

There was no abuse of the trial court's discretion with respect to its allowing Fisher to testify that she was not able to register her vehicle, because it is not hearsay. There is simply no out-of-court statement offered for the truth of the matter stated. H&H does not argue in its brief that Fisher testified that she was *told* she couldn't register her vehicle, which would be hearsay. H&H argues that she shouldn't have been allowed to testify that she *was not able* to register her vehicle. This does not involve a statement, but is a fact to which Fisher had first-hand knowledge. She attempted to register her vehicle with the certificate of title that she was provided by H&H, and she was unable to procure the registration. That was her testimony. Fisher's attorney deliberately never asked her about what anyone told her.

Q: So you did—you did make an attempt to title the vehicle; correct?

A: Yes.

Q: And when was that attempt made?

A: March 27.

[H&H's Counsel]: Objection, Your Honor. I believe this is going to call for hearsay and potentially best evidence if it has anything to do with any communications with the Missouri Department of Revenue.

Court: Well, I'll note the objection, but it is overruled.

Q: So I'll redirect the question. You—you made an attempt to title the vehicle; is that correct?

A: Yes.

Q: Were you able to title the vehicle?

A: No.

17

Q: And from your understanding, why were you not able to title the vehicle?

A: The title—

[H&H's Counsel]: Same objection Your Honor.

Court: Okay. It is noted and overruled.

A: The title was not able to be transferred to me because they did—it was not belonged [sic] to the dealer. It was belonged [sic] to the actual signatures on the title.

Fisher never testified about, nor was she asked about, an out-of-court statement made by anyone. And Counsel's preemptive objection that she might testify about hearsay did not turn her testimony into hearsay.

Further Fisher's testimony was cumulative to the testimony of the owner of H&H, Mr. Ba, who testified that the signatures of all owners are required to assign title to a vehicle, and that the title to the subject vehicle lacked the signature of one of the owners, Kevin Phegley.

Accordingly, the trial court did not abuse its discretion in allowing this testimony, and H&H's point five is denied.

## Conclusion

For all of the above-stated reasons, pursuant to Rule 84.14, we reduce the award of actual damages to $3,528, and we affirm the judgment of the trial court in all other respects. We also grant Fisher's motion for attorney's fees on appeal, which was taken with the case, and remand the case to the trial court for the purpose of determining and awarding to Fisher the appropriate amount of reasonable attorney's fees for work related

18

to this appeal, to be added to the total judgment owed by H&H. *TCN Inv., LLC v. Superior Dental*, 588 S.W.3d 245, 253 (Mo. App. W.D. 2019).

 

                                                Gary D. Witt, Judge

All concur.